JAMES BROWN ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11161–11165, 11224, 15610.   Promulgated February 28, 1928.

---

[1] The following proceedings were consolidated for hearing and decision and the issues involved in all of the proceedings are decided herein: *Thatcher M. Brown*, Docket No. 11162; *J. H. Hammond*, Docket No. 11163; *Louis Curtis*, Docket No. 11164; *Moreau Delano*, Docket No. 11165; *James Crosby Brown*, Docket No. 11224; *Moreau Delano and William A. Delano, Executors, Estate of Eugene Delano, Deceased*, Docket No. 15610.

*Sanford Robinson, Esq.*, for the petitioners.
*Henry S. Drinker, Jr., Esq.*, for James Crosby Brown.
*M. N. Fisher, Esq.*, and *Shelby Faulkner, Esq.*, for the respondent.

1040

## OPINION.

LITTLETON: The principal issue in these proceedings and the one common to all of them is the amount of taxable income realized by the petitioners from the partnership of Brown Brothers & Co. At the beginning of 1920, the partnership was composed of eight partners, six of whom are petitioners in these proceedings. On April 2, 1920, one partner, Eugene Delano, died and the legal representatives of his estate are likewise petitioners. Another partner, George H. Frazier, retired on December 31, 1920, but no petition on his behalf is involved in the present proceedings. The partnership income determined for ordinary business purposes under the articles of copartnership was greater than the taxable distributive income determined under the revenue acts and regulations then in force. The principal reason for the difference in the two incomes is that business income was determined by inventorying securities at the end of the year on the basis of market values, whereas taxable income, for the purposes of the partnership return to determine the distributive shares of the partners, was determined by inventorying securities on the basis of cost or market, whichever was lower. Settlement was made with the partner who retired and the estate of the partner who died on the basis of business income, and the petitioners who continued as partners contend that the entire amount paid to the estate of the decedent and to the retiring partner should be deducted from partnership taxable income in determining the taxable income distributable to each of the continuing partners. On the other hand, the respondent contends that the retirement of the one partner had no effect upon the taxable income of the petitioners and that the amounts paid to the estate of the decedent were for his interest in the business and nothing should be deducted from the income distributable to the petitioners and to the partner who retired at the end of the year.

First, we will dispose of the question raised as a result of the retirement of George H. Frazier from the partnership. Under the articles of copartnership, any partner was permitted to retire on December 31, of any year on giving proper notice at least six months prior to such date. On or before June 30, 1920, Frazier gave such notice and his retirement was effective December 31, 1920. The articles further provided that such retiring partner would receive the same share of partnership profits and the same salary for this last year's connection with the business that he would otherwise have been entitled to receive, and that upon retirement his interest in the good will or name of the partnership would forthwith terminate and that his share of the capital which he had invested in the firm and his share of the profits would be paid to him. We construe the articles of copartnership to mean with respect to a retiring partner, that to all intents and purposes he shall be a partner until the date of his retirement on December 31, when he will be dealt with by the continuing partners, with respect to the amount of salary and partnership income for the preceding twelve months, as if he had never contemplated retirement. At the end of the year the retiring partner was entitled to receive payment for his share of capital in the business and also his share of the partnership earnings for the year in which the retirement became effective.

Under such circumstances, we fail to see why the taxable distributive share of the partners should be affected because of the retirement of Frazier. The situation of Frazier in 1920 with respect to partnership income is the same as that of the continuing partners. The mere fact that the earnings of the partnership to which Frazier was entitled on retirement were determined on a basis different from that provided for the determination of taxable income distributable to the various partners, is not material. Under the articles of copartnership, a partner, upon retirement was entitled to his share of the business income for the preceding twelve months, and also was entitled to be paid for the capital which he had invested in the partnership. That at the end of the year in which Frazier retired the continuing partners or continuing partnership was liable to make payment to him for the capital which he had in the business and also for his share of the partnership profits, as determined pursuant to the said articles of copartnership, does not affect the taxable income for the year of retirement. Under the revenue act in force for the year of retirement here in question, the manner of determining the net income of a partnership distributable to the partners and taxed in their individual returns is clearly defined (section 218, Revenue Act of 1918) and we fail to find anything therein which would permit a deduction of the character here claimed. In order for the continuing partners to have a

partnership after December 31, 1920, in which no interest of the retiring partner would remain, not only must the retiring partner be paid for the capital which he had invested in the business, but also such retiring partner must be paid his share of the partnership profits as determined under the articles of copartnership. In other words, there was a realization by the retiring partner on whatever interest he had in the partnership. This was a capital transaction in which the retiring partner was the seller and the continuing partners through the partnership were the purchasers. This has no effect upon the taxable income of the partnership for 1920, the distributive shares of which are to be taxed to the retiring and continuing partners. The action of the Commissioner on this point is accordingly sustained.

The first question raised by the petitioners, who continued as partners after the death of Eugene Delano, with respect to the payment to the Delano estate is whether the profits of the partnership credited to this estate and determined on the basis of the articles of copartnership should be deducted from the distributive taxable income of the partnership before making an allocation to each of the continuing partners of their respective shares of the partnership profits determined in accordance with the revenue act then in force.

In the determination as made by the Commissioner, the Delano estate was treated as a partner, but at the hearing and in his brief filed after the hearing, the Commissioner conceded that this action was erroneous and that the petitioners' contentions to the effect that the estate was not a partner was correct. While from the mere fact that this is an estate with which we are concerned it does not necessarily follow that the estate could not, under any circumstances, be a member of a partnership (Rowley, Modern Law of Partnerships, vol. 1, p. 182; Ludley, Partnership (8 ed.), p. 86), but since the evidence is insufficient to make a finding in the matter, we shall proceed upon the basis of this agreement between the parties. The Commissioner also concedes the correctness of the petitioners' position that the death of Eugene Delano brought about a dissolution of the then existing partnership. This is in accordance with the laws of New York in effect for the year involved (ch. 408, sec. 62, Laws of 1919, New York). We are also of the opinion that while a dissolution of the partnership as it existed on April 2, 1920, was effected, immediately thereafter there came into existence a new partnership of which the continuing partners were members and in which, under the articles of copartnership, the continuing partners adopted the partnership agreement as it previously existed. When construed in the light of the law, no other interpretation fits the intentions and acts of the parties. There was to be no interruption to the business continuity of the firm, not even a settlement with the estate of the de-

ceased partner, until the end of the year, but in the meantime the continuing partners were carrying on the business as heretofore, under a form of business which they had agreed to have so continued, and in conformity with the partnership agreement which they had agreed should fix their respective rights and obligations. See paragraph thirtieth, articles of copartnership.

But does the fact that the partnership of which Eugene Delano was a member was dissolved at his death on April 2, 1920, and that his estate was not a member of the new partnership which then came into existence, result in any change in the determination of the taxable profits distributable to the continuing partners when the Delano estate is to receive the same profits for the year to which Delano would have been entitled had he lived for the remainder of the year? From a careful consideration of the evidence, particularly the intentions of the parties as evidenced by the partnership agreement, we are brought to the conclusion that the foregoing question must be answered in the negative. The plain intent of the partnership agreement was that regardless of the time during a year in which a partner might die, his estate would share in the partnership profits for the remainder of the year in the same manner as if he had lived throughout the year, and the capital which he had invested in the business would remain in, and at the risk of, the business until the end of the year. No settlement was to be effected until the end of the year, but during the remainder of the year the estate would be entitled to draw such sums for the ordinary and necessary requirements of the family of such deceased partner as such deceased partner, if surviving, might have drawn during the same period. After the end of the year, settlement was to be made with the estate not only on account of the profits for the year, but also for the capital which the deceased partner had in the business. While we must proceed on the theory that the estate was not a partner in the new partnership, the business profits to which it was entitled were the same as if it had been a partner. An agreement to this effect was made by the eight partners prior to the death of the deceased partner in question and when it was uncertain which of them would die first. The profits of the partnership to which the surviving partners were entitled were not the total profits, but the total profits less the amount which all agreed should go to the estate of a deceased partner. There was not, therefore, receipt by these surviving partners of the total profits and then a distribution to the estate, but they were entitled in the first instance to receive only their share of the partnership profits and the remainder was a share of the profits which accrued to the Delano estate.

It is, of course, true that as a result of this arrangement a contractual obligation arose under which the Delano estate must be paid its share of the business profits at the end of the year, but this is a transaction separate and apart from the profits, whether business or taxable, which resulted from the partnership operations during the year. By the satisfaction of the contractual obligation, there was a withdrawal of the earnings of the partnership to which the estate was entitled. At the same time, the estate must be paid for the capital which the deceased partner had in the business. But the satisfaction of neither liability has any relation to the profits which were realized by the partnership in 1920. To say, as the petitioners contend, that the amount of the business profits which were paid to the estate was an expense incident to the use of the capital which the deceased partner left in the business, would not only be contrary to the intent of the partnership agreement, but would also be allowing the reduction of taxable income by an amount which is not expense, but rather an amount which must be paid in liquidation of the claims of the estate against the existing partnership. The fact that the amount that the estate was to receive was a share of the profits which, of course, would have been nothing had there been losses, and not an amount to be paid at all events, further indicates that this was not thought of by the parties as an amount to be paid for the use of capital.

In view of the foregoing, the Board is of the opinion that the business profits of the partnership, as it existed from April 2, 1920, to December 31, 1920, which the Delano estate was entitled to receive under the articles of copartnership, should not be deducted from the distributive taxable income of such partnership before determining the distributive taxable income which is to be taxed to the continuing partners, but that only the distributive share of the taxable income to which the deceased partner Delano would have been entitled had he lived and remained a partner to the end of the year 1920, should be excluded.

The next question is the proper treatment, both from the standpoint of the partnership and the Delano estate, of the salary paid on account of Eugene Delano after his death. Had Delano lived throughout 1920, he would have been entitled to receive $34,000 as salary from the partnership for the year. The partnership agreement, however, provided that on the death of any partner during the year, his salary should continue for account of his estate to the end of the year. When Delano died on April 2, 1920, $8,500, or one-fourth of his salary had been paid to him, and the balance, or $25,500, was credited to his estate on, or prior to, December 31, 1920.

The issue which then arises is: In determining the net taxable income of the old and new partnership which is to be taxed in the

hands of the respective partners, what effect is to be given to the foregoing salary item of $25,500? As we said in the *Appeal of Estate of S. U. Tilton et al.*, 8 B. T. A. 914, "An agreement between partners to pay salaries from profits is nothing more than the determination of a basis for dividing such profits." Since there is no apparent dispute between the parties that profits had accrued on April 2, 1920, sufficient to distribute profits as salaries in the amounts agreed upon, and since his proportionate part of such salary had been paid at this time, it would appear that by the time of his death on April 2, 1920, Eugene Delano had received $8,500 as his share of the profits to that date on account of services rendered. The agreement further provided that, " On the death of any partner during any current year of the partnership  *  *  *,  his salary  *  *  *  shall continue for account of his estate to the thirty-first December next following." That is, upon the death of Eugene Delano, the salary for the remainder of the year, or distribution of profits to which he would have been entitled on account of services which he would have rendered for the remainder of the year, had he lived, accrued as a liability to the new partnership, and became an asset in the hands of the estate on April 2, 1920. The effect of this is that the profits of the old partnership for the first three months of the year which would accrue on account of Eugene Delano's connection with the partnership during this period was not only the amount paid for services rendered, $8,500, but also the additional amount of $25,500 which accrued at his death as well as his share of the profits which remained for distribution after these amounts and the salaries to the other partners had been deducted.

Since this amount, $25,000, represents additional profits of the old partnership which would accrue in favor of the Delano estate upon the death of Eugene Delano, the profits of the old partnership to which the other partners were entitled would be decreased on account of this additional amount which must be deducted before arriving at the distributive share to which each is entitled, exclusive of salaries. In so far as the new partnership is concerned, this amount represented a liability which existed at the beginning of such new partnership on April 2, 1920. When, therefore, the profits of the members of the new partnership are determined, what each would be entitled to receive, exclusive of salary, would be proportionately greater, because the profits accruing in favor of the Delano estate would not include an allowance for salary, but would be the share of the profits to which Eugene Delano would have been entitled, exclusive of salary, whereas each member of the partnership would receive as his share whatever salary he was entitled to receive, plus a distribution of the profits after considering salaries of the part-

ners. It also likewise follows that the receipt or payment of this amount of $25,500 is not taxable to the Delano estate in 1920. It constituted an asset which came into the hands of the estate on April 2, 1920, and was to be taken into account for estate tax purposes, or other purposes, as any other asset received at that time.

Another question in issue and which concerns only the Delano estate, is whether the amount of $161,231.90, credited to the estate on January 8, 1921, as the balance of the share of the partnership profits to which Eugene Delano would have been entitled had he lived to December 31, 1920, is income to the Delano estate in 1920.

Consistent with the agreement of the parties that the Delano estate was not a partner in the partnership of Brown Brothers & Co. from April 2, 1920, to December 31, 1920, section 218 (a) Revenue Act of 1918, which provides for the taxation of a partner's share of profits in a partnership, whether distributed or not, would not be applicable. The estate was on a cash basis and so rendered its return. The amount in question was determined on January 7, 1921, credited to the estate on the following day, and had not previously been paid to the estate. This amount could not, therefore, be income to the estate in 1920 unless it can be said that, while not paid in 1920, it was unconditionally available to, and could have been withdrawn by, the estate prior to December 31, 1920.

A theory advanced by respondent in support of constructive receipt in 1920 is that such a conclusion follows from paragraph twenty-fifth of the articles of copartnership, which states that " on the death of any partner such retiring partner or the legal representative of such deceased partner shall be at liberty to draw from the concern up to the thirty-first December on which such retirement shall take place or in case of death then up to (but excluding) the first January next following such death (interest being charged at the same rate as is provided in the case of personal accounts of partners) such sums for the necessary and ordinary requirements of such retiring partners or of the family of such deceased partner as such retiring or deceased partner if continuing or surviving might have drawn during the same period."

The evidence shows that the amount actually withdrawn, exclusive of the $161,231.90 here in question, was only slightly in excess of that which it was permissible under paragraphs sixth and ninth of the articles of copartnership for the deceased partner or his estate to have withdrawn prior to December 31, 1920. Only a small portion of the $161,231.90 would thus have been constructively received by the estate in 1920 and even as to this amount provision is made for charging interest on withdrawals. The interest provision would indicate that the amount withdrawn was not unconditionally made available to the estate, but rather was an amount advanced in the

nature of a loan which would unconditionally become the. property of the estate when the partnership profits for the year were determined and if the estate's share of such profits were equal to or greater than the amount withdrawn. In view of the foregoing, we are of the opinion that since the amount of $161,231.90 had not been paid to the Delano estate in 1920 and was not unconditionally available to the said estate prior to January 7, 1921, such amount can not be considered as taxable income to the estate in 1920.

The remaining issues in these proceedings concern only one of the petitioners, namely, James Crosby Brown, and are whether certain items constitute proper deductions from this individual's gross income. The first question relates to a loss claimed on certain stock which this petitioner purchased in February and August, 1921, at a total cost of $55,486.50 and sold in December, 1921, to the partnership in which he held a one-seventh interest for $4,996, a loss being claimed in his individual return for 1921 of the difference between the purchase and sale price.

The only evidence we have as to this transaction is that furnished by this petitioner who testified that in his opinion the stock in question was not worth in excess of the amount for which he sold it to the partnership in December, 1921, and that he made the sale for the purpose of establishing a deductible loss. He testified further that the corporation whose stock is in question was becoming seriously involved and that there was no market for the stock at the time. A part of his own testimony in this connection was:

Q. I will ask you if it is not a fact that the cause of this buying and rebuying, you did that to avoid the payment of a profit on the sale of that stock?
A. Profit?
Q. Yes?
A. There was never any profit, no; it was for the purpose of establishing a real loss, and the stock wasn't listed, it had no market at all, and I found a complacent buyer, if you want to put it that way, and sold it.
Q. It was for the purpose of establishing a loss?
A. For the purpose of establishing a loss; absolutely, unquestionably. Everybody else was doing that.

The " complacent buyer " referred to above was, of course, the partnership of which petitioner was a member.

When asked as to the explanation of his repurchase of the same stock approximately one year later at the same price at which he sold it to the partnership, the petitioner said:

I suppose Brown Brothers & Co. told me they were fed up holding it, and they couldn't find a buyer; so I bought it from them.

A few days after this transaction, the petitioner again sold the stock, together with an unsecured note, to the partnership for $100. Apparently, nothing took place between the dates of the last two

transactions which would account for the reduction in value such as would be reflected by real sales, yet we are asked to say that when the petitioner was selling this stock to the partnership and repurchasing it, the parties were dealing at arm's length. We are not convinced that the evidence leads to this conclusion, but rather that these were sales of convenience which have not been shown to have been based on actual values. When a partner makes a sale to a partnership of which he is a member for the avowed purpose of establishing a deductible loss, certainly the burden of proof is on such a taxpayer to show that such a sale is *bona fide* and real. This we are not satisfied has been done in this case. In the *Appeal of M. I. Stewart & Co.*, 2 B. T. A. 737, the Board said:

It can not be too much emphasized that alleged sales of property for the purpose of establishing losses must be real, valid transactions, definitely placing the legal and equitable ownership of the property alleged to have been sold out of the hands and out of the control of the seller. In the case of corporations sales to stockholders in all cases are subject to special scrutiny and their good faith must be unquestioned. The principle of corporate entity can not be used to cloak a transaction which is essentially a fraud upon the public revenue.

With even more reason, this same principle should be applied in the case of dealings between a partner and a partnership of which he is a member.

In view of the foregoing, the claim of the petitioner for a loss on the foregoing transaction in 1921 is denied.

The next question is whether the amount paid petitioner, James Crosby Brown, by one Bache to induce Brown to purchase certain stock of the Kali Inla Coal Co. is a reduction of the cost of the stock to Brown or whether it is to be treated as taxable income. The substance of the transaction is that when the minority stock was offered for sale, Bache, the majority stockholder, was unable to purchase the stock himself and was desirous that the stock be purchased by some one friendly to the Coal Company as it then existed. Bache accordingly urged Brown to purchase the stock at the price offered, but Brown was reluctant to make a purchase at this price because he said he thought the price too high. Bache then agreed to pay certain amounts to Brown if he would purchase some of the stock. Our question is whether this is to be treated as a reduction of the cost of the stock to Brown, or whether it is taxable income to him.

On a consideration of the entire evidence connected with this transaction, the Board is of the opinion that the amount paid to petitioner by Bache does not constitute taxable income to him, but was a reduction of the cost of the stock. This amount was paid in furtherance of an understanding between petitioner and Bache under which petitioner made the purchase and, in the minds of both parties, represented a reduction of the investment by petitioner. Petitioner ac-

quired the stock from the Jackson estate coupled with a contract that Bache would, in effect, make the cost to petitioner less than the agreed consideration between petitioner and the Jackson estate. When the two contracts are considered together upon the basis of the intent of the parties when made, and in the light of the results reached in their final consummation, we fail to see how the amount in question can be considered as taxable income. The action of the respondent in treating the amount paid by Bache to Brown as taxable income is accordingly reversed.

With respect to the loss claimed by James Crosby Brown on account of the loan of $2,500 to the Musical Art Club of Philadelphia, we are satisfied from the evidence that this was a *bona fide* loan when made and that it was properly determined to be worthless and charged off in 1921. The fact that a release of the club of any liability on account of the loan was not executed until 1922 is not considered material as the fact that a debt is determined to be worthless at one time will not prevent collection at a future date, should the debtor come into possession of funds upon which the creditor might levy. The contention of the petitioner on this point is accordingly sustained.

The final point in the case relates to the profit of $10,358.72 realized by petitioner, James Crosby Brown, on the sale of certain stock of the Wall & Hanover Street Realty Co. The parties are agreed that the foregoing amount is the correct profit to be reported on this transaction and the recomputation with respect thereto should be made accordingly.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

STERNHAGEN dissents in part.