## LAKESIDE IRR. CO., Inc., v. COMMIS-SIONER OF. INTERNAL REVENUE.

### No. 9897.

Circuit Court of Appeals, Fifth Circuit.
May 20, 1942.

Camden R. McAtee, of Washington, D. C., for petitioner.

Edward H. Hammond, Sewall Key, J. Louis Monarch, and Gerald L. Wallace, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Charles E. Lowery, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and Mc-CORD, Circuit Judges.

SIBLEY, Circuit Judge.

The taxpayer corporation in the tax year 1936 was indebted to a stockholder in a large amount long past due. Its president by letter advised her that the corporation wished to sell four named lots of stock it owned in other unrelated corporations and apply the proceeds in part payment of her debt, or if she preferred would transfer the stocks to her for a credit of their market value. By telephone she elected to take the stocks. The directors by a formal resolution on their minutes

directed the president to ascertain the market values, and deliver the stocks at one time for a credit in a lump sum of their aggregate market value. This was done. On two lots of the stock there were gains over their cost of $11,525. On the other two there were losses aggregating $11,175.50. The taxpayer on its income tax return returned only the net gain of $349.-50. The Board of Tax Appeals, sustaining the Commissioner, held that the gains of $11,525 must be returned, and that the losses of $11,175.50 could not be deducted, since this stockholder and her children and grandchildren owned more than 50 percentum of the taxpayer's outstanding stock, because of Revenue Act of 1936, Sect. 24(a) (6), 26 U.S.C.A. Int.Rev.Acts, page 831. The taxpayer then asked a credit of this gain against the basis of its undistributed profits tax, under Sect. 26(c) (2). This credit was denied because the resolution of the directors was not the sort of written contract meant by this section.

■ The taxpayer first urges here that the transfer of the stocks for a credit on a corporate debt was neither a sale nor exchange of them, but some other disposal, and therefore not a transaction within Section 24(a) (6). The section declares: "In computing net income no deduction shall in any case be allowed in respect of * * * (6) Loss from sales or exchanges of property, directly or indirectly * * * (B) * * * between an individual and a corporation in which such individual owns, directly or indirectly, more than 50 percentum in value of the outstanding stock." Indirect ownership is defined to include ownership by lineal descendants. The phrase "sale or exchange" occurs frequently in the Revenue Acts. We considered its meaning quite recently as used in Section 117(d) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 708, and held that a voluntary transfer of property in payment of a debt personally owed was either a sale or an exchange. Burger-Phillips Co. v. Commissioner, 5 Cir., 126 F.2d 934. The same reasoning will apply to a transfer of property for a credit on such a debt. We think the words "sale or exchange" in both Sections have the same meaning, and in this case there were sales or exchanges within Sect. 24(a) (6).

■■ On the question whether for tax purposes what happened is one single and inseparable sale or exchange, or may and must be considered as four, no direct authority is cited. We are of opinion that in ascertaining gain and loss by sales or exchanges of property previously purchased, in general each purchase is a separate unit as to which cost and sale price are to be compared. If less than all of a purchase is sold, either a credit on the cost of all is to be entered, or a proportion of the cost is to be attributed to what is sold, as Regulations may have prescribed. If several things separately bought are welded into some physical or business unit, as where bricks, lumber and hardware are made into a house, or machines and buildings are made into a plant, and then sold together, the cost is the aggregate costs of the ingredients, and the sale price is that of the whole, for separation would be impracticable and unreasonable. But where, as here, four unrelated lots of stock were separately acquired and might readily have been separately sold, the fact that after ascertaining the value of each lot all were transferred together for a lump price will not require or authorize a merger of costs. The United States may enquire as to which stocks were disposed of at a profit and tax the profit, and may ignore losses altogether on the disposal of other stocks, though realized at the same time and in the same transaction. Section 24(a) is emphatic in declaring that in the transactions it names, including loss from sales or exchanges between persons related as they are here, "no deduction shall in any case be allowed". It seems hard that this is so in this case, because it would have been otherwise had the stocks been sold and the money paid to the creditor stockholder, who might with the money have bought these or like stocks; but thus the statute is written.

■ Lastly, the additional gain thus charged to the taxpayer went to increase the basis of its tax on undistributed profits. The claim is made that the directors' resolution, dated prior to May 1, 1936, which directed the disposal of the stocks for a credit of their value on the corporation's debt, was a written contract executed by the corporation which required this part of the "earnings and profits of the taxable year" to be paid on a debt, so as to entitle to a credit under Sect. 26(c) (2). Assuming that there was a written contract executed by the corporation, without so deciding, we think it wholly fails to satisfy the statute, which demands a "provision of a written contract * * *,

which provision expressly deals with the disposition of earnings and profits of the taxable year." This resolution makes no mention at all of earnings and profits. It so happens that a gain was realized by applying the stocks to a debt as the resolution required, but the resolution did not require anything to be done with the gain so produced. Moreover, the phrase "earnings and profits of the taxable year" refers to them as ascertained for the whole or a part of the year, and not to some single item of gain in a particular transaction.

The judgment of the Board of Tax Appeals is affirmed.