## M. F. REDDINGTON CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.
### No. II.

Circuit Court of Appeals, Second Circuit.

Dec. 2, 1942.

Before L. HAND, CHASE and FRANK, Circuit Judges.

Harry J. Rudick, and Lord, Day & Lord, all of New York City, for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Morton K. Rothschild, Sp. Assts. to the Atty. Gen., for respondent.

FRANK, Circuit Judge.

During the taxable year, Martin F. Reddington was president of taxpayer, a New York corporation, and owned 9,500 of the 18,000 shares of taxpayer's common

stock. The remainder of the outstanding common stock of taxpayer was owned by Reddington's daughter. Reddington owned the entire outstanding preferred stock of taxpayer, consisting of 2,500 shares. Taxpayer was originally a going concern engaged in the advertising business, but ceased active business upon retirement of Reddington in 1931. Taxpayer concedes that, during the taxable year, it was a personal holding company within the meaning of § 402(a) of the Internal Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1130.

On June 27, 1938, Reddington caused taxpayer to sell him, for $315,181.25, securities consisting of shares in twenty-one different corporations at their fair values on that date. Taking the aggregate cost of these securities as a unit, the sale resulted in a loss of $79,481.20. But if the transaction be regarded as twenty-one sales, then it appears that sixteen resulted in losses and five resulted in gains aggregating $27,500.03. The sale of the securities by taxpayer to Reddington was effected. because he considered those securities speculative and did not wish to jeopardize his daughter's interest in taxpayer by reason of retention of speculative securities in taxpayer's portfolio. The following statement appears in the minutes of a regular meeting of the Board of Directors of taxpayer held July 5, 1938, at which the sale of the twenty-one securities on June 27, 1938 was approved: "The Chairman pointed out that the sale was to constitute a single transaction whereby the securities were sold as a block for the lump sum equal to their value thereof, to wit, $315,181.25."

In its 1938 income tax and excess-profits tax return and in its 1938 personal holding company surtax return, taxpayer did not attempt to deduct any portion of the $79,481.20 aggregate loss, but did not include in its income any part of the gains on the five items above noted. The Commissioner determined deficiencies, based on the nonexclusion of such gains. On petition to the Board, the Commissioner was sustained, and the taxpayer asks us to review and revise the Board's order.

Section 24(b) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1016, in part provides:

"(1) Losses disallowed.—In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly. * * *

"(B) Except in the case of distributions in liquidation, between an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual; * * *

"(2) Stock ownership, family, and partnership rule.—For the purposes of determining, in applying paragraph (1), the ownership of stock * * *

"(B) An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family * * *

"(D) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; * * *."

■ The intention of Congress obviously was to prevent the fixing of losses by the transactions of personal holding companies. The taxpayer contends that the statute forbids merely the deduction of net losses. Taxpayer grants that the Commission would be correct, if the sales of the twenty-one items had consisted of twenty-one separate sales, each made on a separate day. But it argues that here the situation is different in two significant respects: (1) The sales were made simultaneously, with payment of the purchase price, by agreement, in a lump sum; (2) Reddington's purpose was to protect his daughter's interest in the taxpayer.

■■ We think this reasoning unsound. The gains were part of taxpayer's gross income as defined in § 22 (a), 26 U.S.C.A. Int.Rev.Acts, page 1008. Congress was not required to permit any deductions from gross income. New Colonial Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348. It did permit some deductions of losses, but forbade deduction of losses resulting from sales by a person holding as large a percentage of the company's stock as that owned by Reddington. If, in forbidding deduction of such losses, Congress had intended to refer to "net losses," it was easy to say so.[1] The application of the "so easy to say so rule" is pertinent here,

[1] Commissioner v. Beck's Estate, 2 Cir., 129 F.2d 243, 245 note 2 and cases there cited. Hoffman v. Palmer, 2 Cir., 129 F.2d 976, 978, 986, note 19.

since Congress elsewhere in the same Act used the "net loss" locution: In Section 117 of the same Act, it provided in subdivision (d) (2), 26 U.S.C.A. Int.Rev.Acts, page 1062 that "short-term capital losses shall be allowed only to the extent of short-term capital gains," and went on in subdivision (e) to provide for a carry-over in the event of a "net short-term capital loss."[2]

 Taxpayer, as noted, admits that the net-loss concept would not apply if the twenty-one sales had been made on separate dates. It is difficult to see why such a concept should be implied merely because the sales here were lumped together. Were that regarded as a differentiating fact, it would be easy to avoid the Congressional purpose. And that Redding-ton's intention was not to avoid taxes cannot be significant. The successful avoidance of the obligation to pay taxes should not, ordinarily, be made to turn on the ability of the Commissioner to show that the taxpayer had no intention to avoid that obligation—in the absence of statutory language, expressly or by clear implication, making that factor the criterion—for other- wise the administration of the tax laws will be rendered too difficult.[3]

 It is perhaps conceivable that there might be some circumstances, even under § 24, where a number of sales of related articles would be regarded as one sale, integrated because of some significant correlating fact. But we are satisfied that here there was not enough to make the many one. That the purchaser and seller (here by no means easy to differentiate) grouped them together in their minds—because the securities had the common characteristics of being investments of a kind not desirable from the point of view of the daughter of the seller's principal stockholder—does not suffice to bring unity out of diversity. Between the parties and for some purposes other than § 24, the transaction may have been single. But what is an entity for one purpose may not be so for all purposes.[4] All men living in

the United States who are more than six feet tall may be grouped together by the census-taker, but, to their friends and relatives, that grouping is arbitrary and irrelevant.

The order of the Board of Tax Appeals is affirmed.

---

[2] See, also, §§ 26(c) (1) (2), 182, and 183(b) (2) of the Revenue Act of 1938, 52 Stat. 447, 26 U.S.C.A. Int.Rev.Acts, pages 995, 1020, 1086.

[3] Cf. Paul, Selected Studies in Federal Taxation, Second Series (1938), 254 et seq. Paul speaks of the "shadowy territory of intention." While he shows that adventuring into that territory is some-

times necessary, he observes that evidence as to the taxpayer's motive or intent will usually be "almost entirely in the possession of the taxpayer, unless psychology devises a better mental x-ray than has so far been discovered."

[4] Cf. Old Colony R. Co. v. Commissioner, 284 U.S. 552, 562, 52 S.Ct. 211, 76 L. Ed. 484.