MORRIS INVESTMENT CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

No. 9100.

Circuit Court of Appeals, Third Circuit.
Argued May 21, 1946.
Decided July 25, 1946.

Edward L. Blackman, of New York City (Walton Clark, Jr., of New York City, on the brief), for appellant.

Carlton Fox, of Washington, D. C. (Sewall Key, Acting Asst. Atty. Gen. and Helen R. Carloss, Sp. Asst. to Atty. Gen., on the brief), for appellee.

Before MARIS, GOODRICH, and Mc-LAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Petitioner, a Delaware corporation, is a personal holding company.[1] In 1941, the taxable year, Mrs. Morris was its president and owned 91.87 per cent of its outstanding common capital stock. The balance of the stock was held by the estate of her late husband, her daughter and son-in-law. That stock had been given to the estate, her daughter and son-in-law by Mrs. Morris. Prior to 1941 Mrs. Morris arranged to create three trusts for the benefit of her daughter and grandchildren. To set up these trusts Mrs. Morris arranged to purchase from the taxpayer a quantity of stocks in various other corporations. On September 16, 1941, at a special meeting of the board of directors, Mr. Blackman, a director and attorney for Mrs. Morris, announced that the company had received an offer to purchase for the sum of $131,368.-75 certain stocks owned by the company.[2] The sale was made and a company resolution adopted authorizing acceptance of Mrs. Morris' promissory note in payment. Specific resolutions were had covering the two American Telephone items and the Chesapeake stock because of suggested probable transfer difficulties. All of the particular stocks were active on the New York Stock Exchange and the figure $131,368.75 was the aggregate of the market prices of the stocks sold, at the close of September 15, 1941. The note given by Mrs. Morris has not been paid. In its return for 1941 petitioner reported a long term capital loss on the stocks of $198.21. Explaining this in a statement attached to the return the taxpayer said:

"The stocks listed above, having a total acquisition cost of $131,566.96, were sold and paid for at a total price of $131,368.75 and delivered Sept. 16, 1941, to the purchaser, Mrs. K. Clark Morris, chief stockholder and president of this company, *the prices* being the market prices for said stocks at the close of September 15, 1941. The net loss realized on *these sales* was $198.21." (Emphasis supplied.)

Petitioner had no general investment account. Each certificate of stock held by it including those sold to Mrs. Morris was kept in a separate account so that petitioner could tell what the adjusted acquisition cost of such certificate was at any time to apply against any ultimate realization and to collate tax returns easily. Following the Morris sale appropriate entries were made in the separate accounts. The amount entered as sales price was the price at which the particular kind of stock had sold at the last sale prior to September 15, 1941. Petitioner had a deficit of $10,-420.51 on December 31, 1940 and at the close of December 31, 1941 had a deficit of $11,144.73. Its earnings were paid out at the end of the year.

The Commissioner rejected the taxpayer's theory which permitted the losses on some of the stocks sold to offset the gains on others with the transaction considered as one sale at a loss of $198.21. Viewing each block of stock as a distinct sale and acting under Section 24(b) (1) (B) of the Internal Revenue Code, 26 U.S. C.A. Int.Rev.Code, § 24(b) (1) (B),[3] he denied any losses on the stocks sold and included the gains as taxable income. He

---

[1] "Sec. 501. Definition of personal holding company.

"(a) General rule. For the purposes of this subchapter and chapter 1, the term 'personal holding company' means any corporation if—

\* \* \* \* \* \* \*

"(2) Stock ownership requirement. At any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals."

26 U.S.C.A. Int.Rev.Code, § 501.

[2] These stocks were:

700 shares of capital stock of Amerada Corporation;

150 shares of capital stock of American Telephone and Telegraph Company;

500 shares of capital stock of Union Carbide and Carbon Corporation;

25 shares of common stock of Atchison, Topeka and Santa Fe Railway Co.;

200 shares of common stock of Chesapeake and Ohio Railway Company;

150 shares of common stock of Union Pacific Railroad Company;

150 shares of common stock of Corn Products Refining Company.

[3] "Section 24. Items not deductible.

\* \* \* \* \* \* \*

(b) Losses from sales or exchanges of property. (1) Losses disallowed. In computing net income no deduction shall

also determined a deficiency against the petitioner in personal holding company surtax. Both questions are before us on this review.

As the petitioner presents its position under the first point, it made one sale, substantially at cost, with the gains on some of the securities offsetting the losses on others. Though the mechanics of the transaction were worked out rather carefully we do not think that the result can be fairly so classified. The testimony of the treasurer of the taxpayer is clear that for some years prior to 1941 the petitioner had kept individual entries for each certificate of stock. This was partly in order that at any time in the future the adjusted acquisition cost could be applied against any ultimate realization, and he did that "all the way through." From those records at the request of the president of the concern, he prepared a list of stocks of the aggregate value of $130,000 or $132,000. Their acquisition value was about the same total. Those shares were grouped together at their lump sum aggregate value and sold to Mrs. Morris. The specific resolutions authorizing the sale of three of the blocks of stock comprising in value more than a fifth of the total, made no mention of the group sale. While transfer difficulties might well have been the reason for these further resolutions they do not help petitioner's contention. Nor does the explanatory note on petitioner's income tax return for 1941 which, referring to the purchase by Mrs. Morris, speaks of "the prices for said stocks" and "the net loss on these sales." As the Tax Court said: "The petitioner is in effect in the position of having kept the stocks carefully separated, to facilitate bookkeeping, calculate adjusted costs against ultimate realization and to collate tax returns, yet denying such separability where there was such ultimate realization from the sale here in question."

The decided cases strongly support this view. In M. F. Reddington, Inc., v. Commissioner, 2 Cir., 131 F.2d 1014, a personal

holding company sold its controlling stockholder shares in twenty-one different corporations at their fair values. Taking the aggregate cost of those securities the sale resulted in a loss. Considered as twenty-one sales, sixteen resulted in losses and five in gains. There was a statement by the chairman of the board of directors of the company in the minutes of a meeting held after the sale that the sale was to constitute a single transaction. In affirming the Board of Tax Appeals that what took place was really a number of separate sales, Judge Frank for the Court said 131 F.2d at page 1016: "It is perhaps conceivable that there might be some circumstances, even under § 24, where a number of sales of related articles would be regarded as one sale, integrated because of some significant correlating fact. But we are satisfied that here there was not enough to make the many one."

In Lakeside Irrigation Co. v. Commissioner, 5 Cir., 128 F.2d 418, certiorari denied 317 U.S. 666, 63 S.Ct. 71, 87 L.Ed. 535, a stockholder and her children and grandchildren owned more than fifty per cent of the taxpayer corporation's outstanding stock. The company owed the stockholder a large past due debt. It was mutually agreed that as part payment she take four named lots of stock held by the taxpayer in other unrelated corporations. The directors of the taxpayer by resolution instructed the president to ascertain the market values and deliver the stocks at one time for a credit in a lump sum of their aggregate market value. This was done. On two of the lots there were gains and on the other two, losses. The taxpayer on its income tax return reported only the net gain. In denying the taxpayer's basis of calculation the Court said 128 F.2d at page 419: "On the question whether for tax purposes what happened is one single and inseparable sale or exchange, or may and must be considered as four, no direct authority is cited. We are of opinion that in ascertaining gain and loss by sales or

in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly—

\* \* \* \* \* \* \*

(B) Except in the case of distributions

in liquidation, between an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual; \* \* \*."

exchanges of property previously purchased, in general each purchase is a separate unit as to which cost and sale price are to be compared. If less than all of a purchase is sold, either a credit on the cost of all is to be entered, or a proportion of the cost is to be attributed to what is sold, as Regulations may have prescribed. If several things separately bought are welded into some physical or business unit, as where bricks, lumber and hardware are made into a house, or machines and buildings are made into a plant, and then sold together, the cost is the aggregate costs of the ingredients, and the sale price is that of the whole, for separation would be impracticable and unreasonable. But where, as here, four unrelated lots of stock were separately acquired and might readily have been separately sold, the fact that after ascertaining the value of each lot all were transferred together for a lump price will not require or authorize a merger of costs." And see Matthews v. Squire, D.C.W.D. Wash., 59 F.Supp. 827, and W. A. Drake, Inc., v. Commissioner, 3 T.C. 33, 39.

■ Under the facts and the above opinions we think the disposal of the lots of stock to Mrs. Morris must be construed as a number of distinct sales of the various items. Since Mrs. Morris owned more than fifty per cent of the stock of the petitioner, losses to the latter cannot be deducted under Section 24(b) (1) (B), supra. The limitation of that section is sound tax law. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L. Ed. 1348; White v. United States, 305 U. S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172; Deputy v. Du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416. Petitioner, however, is taxable on any gains to it from the sales, under Section 22(a), 26 U.S.C.A. Int.Rev.Code, § 22(a). The Reddington and Lakeside decisions, supra, effectively answer the other contentions of the petitioner made under this first question.

■ The remaining question involves the surtax imposed upon petitioner for 1941 undistributed income. Petitioner had a deficit at the end of both 1940 and 1941 and its earnings were paid out at the end of the latter year. Respondent attacks petitioner's deficit status, but the finding to that effect by the Tax Court on evidence from which such conclusion could be drawn is final. However, since the petitioner is a personal holding company it is excluded from the benefits extended by the Internal Revenue Code under Section 27(a) (3), 26 U.S.C.A. Int.Rev.Code, § 27(a) (3), to deficit corporations. The personal holding company surtax is provided for by Section 500, Subchapter A of Chapter Two of the Code[4] and is levied on undistributed Subchapter A net income. Section 504 defines undistributed Subchapter A net income as Subchapter A net income (as defined in Section 505) minus—"(a) The amount of the dividends paid credit provided in Section 27(a) without the benefit of paragraphs (3) and (4) thereof * * *." Section 27(a) (3) includes in the dividends paid credit: "The amount, if any, by which any deficit in the accumulated earnings and profits, as of the close of the preceding taxable year (whether beginning on, before, or after January 1, 1939), exceeds the amount of the credit provided in section 26(c) (relating to net operating losses), for such preceding taxable year (if beginning after December 31, 1937)."

■ The petitioner was before this Court previously in Morris Investment Corporation v. Commissioner, 3 Cir., 134 F.2d 774 on a deficiency in its 1937 surtax. We there held that the equivalent sections of the Internal Revenue Code then applicable did not include personal holding companies

---

4 "Sec. 500 [as amended by Section 110 (a) (2) of the Revenue Act of 1941, c. 412, 55 Stat. 687]. Surtax on personal holding companies.

"There shall be levied, collected, and paid, for each taxable year beginning after December 31, 1938, upon the undistributed subchapter A net income of every personal holding company (in addition to the taxes imposed by chapter 1) a surtax equal to the sum of the following:

"(1) 71½ per centum of the amount thereof not in excess of $2,000; plus

"(2) 82½ per centum of the amount thereof in excess of $2,000." 26 U.S. C.A. Int.Rev.Code, § 500.

in the benefits allowed deficit corporations. Petitioner states that it bows to that decision but argues that Congress never meant to surtax a personal holding company in the particular circumstances of the petitioner. It urges that the purpose of the surtax was to force distribution of profits taxable in the hands of stockholders, saying that a distribution of the Morris sale profits would have been from capital and not taxable to stockholders. Distribution of profits undoubtedly was one of the reasons for Section 500 surtaxing personal holding companies but it is not pretended that the general language of that section contains any exceptions. That language clearly excludes petitioner from the benefits of Section 27(a) (3) and must be followed unless and until Congress sees fit to change it. Crossett Western Co. v. Commissioner, 3 Cir., 155 F.2d 433.

Affirmed.