ROBERT Z. ALIBER & DEBORAH ALIBER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Aliber v. Commissioner
Docket No. 41072-84
United States Tax Court
T.C. Memo 1987-10; 1987 Tax Ct. Memo LEXIS 10; 52 T.C.M. (CCH) 1316; T.C.M. (RIA) 87010; January 6, 1987. *10 In ostensibly separate contracts, petitioner sold his entire interest in LP, a limited partnership, and purchased condominium apartments from LP. Held, on the facts presented, the sale and purchase were a single transaction; petitioner effectively transferred his interest in LP for condominium apartments. Held,further, character and gain from transaction determined. Robert Z. & Deborah Aliber, pro se. Robert Simon, for the Respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined, in an amendment to his answer, a deficiency in petitioners' 1980 Federal income tax in the amount of $19,816.95. After concessions, the issues are (1) whether the sale of a limited partnership interest and the purchase of condominium apartments are a single transaction, and (2) the character and amount of gain or loss from such sale and purchase, whether or not a single transaction. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Robert Z. Aliber and Deborah Aliber (hereinafter "petitioners"), husband and wife, [1] resided in Chicago, *11 Illinois, at the time they filed their petition herein. They filed their Federal income tax return for 1980 with the Internal Revenue Service Center, Kansas CityMissouri. Petitioner is a professor at the University of Chicago. On August 15, 1978, petitioner purchased 19 of 288 limited partnership units [2] in Sherry Associates (hereinafter "Sherry") for $19,000 ($1,000 per LPU). Sherry, whose general partner was Development Associates, Inc. (hereinafter "DAI"), was organized to renovate the Sherry Hotel, to convert it into a condominium development, and to sell the newly formed condominium apartments. The limited partners shared as a class in 50% of Sherry's profits and losses. DAI, as general partner, received the other 50% of Sherry's profits and losses. The Sherry Hotel was refurbished and its name was changed to the Hampton House Condominium. It is the home of Chicago's mayor, the honorable Harold Washington. In the summer *12 of 1980, petitioner became greatly concerned about Sherry's ailing financial condition. Actual sales of the condominium apartments were less than its projected sales, whereas actual expenses, particularly financing expenses, were greatly in excess of projected expenses. On November 12, 1980, DAI, partially in response to petitioner's concern, offered to purchase LPUs from the limited partners, subject to certain conditions. According to DAI's offer, it would purchase LPUs from those limited partners who would agree to purchase condominium apartments from Sherry. The price DAI would pay for each LPU was dependent upon the ratio between the aggregate list price of the condominium apartments agreed to be purchased to the number of LPUs owned by the limited partner. Given a fixed number of LPUs, the higher the aggregate list price of the condominium apartments agreed to be purchased, the higher the price DAI would pay for each LPU. Though petitioner was interested in using his LPUs to purchase condominium apartments, other limited partners were not. Petitioner approached those other limited partners to purchase their LPUs with the purpose of using such LPUs in purchasing condominium *13 apartments from Sherry. In November and December of 1980, petitioner purchased 10 LPUs for $370.00 per LPU and 92 LPUs for $367.10 per LPU. [3] Since the majority of the LPUs were purchased for $367.10 per LPU, we find that the fair market value of an LPU was $367.10 during the final two months of 1980. On December 4, 1980, petitioner sold his 121 LPUs to DAI (hereinafter "LPU sales contract"). [4] The sale was conditioned upon petitioner's purchase of condominium apartments from Sherry and was not to become effective until the purchase of the condominium apartments was closed. In full consideration for petitioner's 121 LPUs, DAI agreed to pay $82,280 [5] *14 to Sherry on petitioner's behalf at the closing of the purchase of condominium apartments. On the same date, petitioner agreed to purchase from Sherry three condominium apartments having an aggregate list price of $302,868. The purchase of these condominium apartments was closed on December 31, 1980. [6] In the closing statements, petitioner was credited with payment of $82,280 with the following notation, "CREDIT (Sherry Associates Limited Partnership units)." The remaining portion of the purchase price, $220,588, was paid with proceeds from a mortgage loan.Petitioner would not have purchased the three condominium units if he actually had to pay the aggregate list price of $302,868. On December 31, 1980, Sherry had nonrecourse *15 liabilities in the amount of $1,736,400. The parties have stipulated that petitioner's bases in his 1978 block of LPUs and his 1980 block of LPUs were, as of December 31, 1980, $69,657.85 and $344,961.32, respectively. [7]
The parties have stipulated that Sherry had accounts receivable of $43,165 as of December 31, 1980. Sherry's audited financial statements for the year ended December 31, 1980, reflects that over 98 percent of the accounts receivable were attributable to condominium apartment owners' reimbursement obligations to Sherry for property taxes billed to Sherry. The parties stipulated the following: "On December 31, 1980, $9,067.62 of the amount of proceeds received by petitioner upon sale of his 121 [LPUs] is attributable to his share of the unrealized partnership receivables of $43,165.No amount received by petitioner is attributable to substantially appreciated partnershp inventory items." On petitioners' 1980 Federal income tax return, petitioner *16 reported a long-term capital loss of $12,024.72 with respect to the 1978 block of LPUs. He reported neither gain nor loss with respect to his acquisition and disposition of the 1980 block of LPUs. Respondent initially concluded that petitioner recognized ordinary income of $3,427 and a long-term capital gain of $41,378 with respect to his dealings in the LPUs. Based on these conclusions, respondent originally determined a deficiency in petitioners' Federal income tax in the amount of $10,345.56. [8] In an amendment to his answer, respondent revised his initial conclusions and concluded that petitioner recognized ordinary income of $9,067.62, a long-term capital loss of $884.63, and a short-term capital gain of $24,241.66. Based on these revised conclusions, respondent redetermined petitioners' deficiency to be $19,816.95. OPINION Petitioner contends that the purchase of the condominium apartments and the sale of the 121 LPUs were one integrated transaction, that he effectively exchanged his 121 LPUs and the proceeds *17 of a mortgage loan for the condominium units, and that the fair market value of the condominium apartments is determinable by the amount stated in the condominium purchase contract only after considering the discount he received in the exchange. Respondent contends that the purchase of the condominium apartments and the sale of the 121 LPUs were separate transactions, that the purchase price of the condominium apartments was for $302,868, giving rise to neither gain nor loss, and that the sale price of the LPUs was for $82,280 plus relief of debt, giving rise to ordinary income, long-term capital loss, and short-term capital gain in the amounts set forth in the findings of fact. Respondent's contention that the purchase of the condominium apartments and the sale of the 121 LPUs were separate transactions in untenable. On the same day petitioner sold his LPUs, he agreed to purchase the three condominium apartments. This transfer and this acquisition, formally memoralized in separate documents, are related beyond the mere identity of the dates upon which they were executed. The sale of the LPUs became effective and was conditioned upon the closing of the condominium apartment purchase *18 contract. The consideration for the LPUs was not paid to petitioner, but rather was applied to reduce the purchase price of the three condominium apartments. The amount of such consideration was dependent upon the aggregate list price of the condominium apartments he agreed to purchase. The condominium apartment purchase contract reflects that the proceeds of the LPU sales contract were applied to reduce the amount payable for the condominium apartments.The interrelationships between these ostensibly separate contracts indicate that the parties to the contracts intended that the purchase of the condominium apartments and the sale of the LPUs be mutually dependent. DAI would not have purchased petitioner's LPUs had petitioner not agreed to purchase the condominium apartments, and petitioner would not have purchased the condominium apartments at their aggregate list price. Based on these facts, we hold that petitioner has, to the extent he must shoulder the burden of proof, [9] shown by strong proof that the transfer of the LPUs and the acquisition of the condominium apartments occurred in one transaction. See Kreider v. Commissioner,762 F.2d 580 (7th Cir. 1985). (Where the taxpayer *19 attempts to vary the form of contracts he has voluntarily entered into, he may do so only by showing with strong proof that the variation is consistent with the intent of the parties to the contract and the economic realities.) Petitioner effectively transferred his LPUs and the proceeds of a mortgage loan for his three condominium apartments. [10] We are to determine the amount and character of the gain or loss petitioner realized from this transaction. The amount of gain or loss realized from a sale or other disposition of property is the difference between the amount realized and the adjusted basis. Sec. 1001(a). [11] This seemingly simple computation is here complicated by several factors. First, money was transferred in the transaction by way of a mortgage loan. Second, property was received by petitioner in the transaction. Third, the property transferred in the transaction represented interests in a limited partnership *20 that had nonrecourse liabilities. Fourth, the property transferred had a split holding period. And fifth, the property transferred represented interests in a limited partnership that had accounts receivable. We will consider each factor below. Petitioner transferred $220,588 to Sherry pursuant to a mortgage loan. Where the property transferred is money, there is no sale or other disposition of property, but rather a nontaxable purchase. See Palmer v. Commissioner,302 U.S. 63, 68-69 (1937). We will divide the transaction between the purchase portion of the transaction and the exchange portion of the transaction. In the purchase portion of the transaction, petitioner purchased $220,588 worth of condominium apartments. In the exchange portion of the transaction, petitioner exchanged his 121 LPUs for the portion of the condominium apartments not purchased. Petitioner received the portion of the three condominium apartments not purchased in exchange for his LPUs. Where property *21 is received in an exchange, the amount realized includes the fair market value of the property received. Sec. 1001(b). Respondent argues that the fair market value of the condominium apartments was set by the condominium purchase contract concluding that the fair market value of the condominium apartments was $302,868. We agree with respondent that the transaction entered into between petitioner, Sherry, and DAI set the fair market value of the condominium apartments. Guggenheim v. Rasquin,312 U.S. 254, 258 (1941). ("Cost is cogent evidence of value.") However, we do not agree with respondent's conclusion. In concluding that the fair market value of the condominium apartments was $302,868, respondent failed to properly consider the credit petitioner received for trading in his 121 LPUs. Since the amount of the credit per LPU increased as the aggregate list price of the condominium apartments purchased increased, it follows that a portion of the credit is attributable to a discount petitioner received on the purchase of the condominium apartments and a portion of the credit is attributable to the fair market value of the 121 LPUs. Petitioner has advanced several arguments for *22 determining the amount of the discount he received. We consider the best method to determine the amount of the discount is simply to subtract from the amount of the credit, the fair market value of the 121 LPUs. The fair market value of an LPU as of December 31, 1980, was $367.10. Subtracting from the $82,280 credit received by petitioner the $44,419.10 ($367.10 X 121) fair market value of 121 LPUs, we determine the discount received by petitioner to be $37,860.90. Subtracting this discount from the stated sales price of $302,868, we hold that the fair market value of the three condominium apartments was $265,007.10 as of December 31, 1980. Subtractiang from the fair market value of the condominium apartments the portion thereof which was purchased, we conclude that the fair market value of the portion of the condominium apartments acquired in the exchange was $44,419.10 ($265,007.10 - $220,588). This amount will be included in petitioner's amount realized. Petitioner transferred his LPUs at a time when Sherry had nonrecourse liabilities in the amount of $1,736,400. A limited partner's share of a limited partnership's nonrecourse liabilities is the same as his share of the limited *23 partnership's profits. Sec. 1.752-1(e), Income Tax Regs. Petitioner's share of Sherry's profits was 21.0069 percent; [12] accordingly, his share of Sherry's nonrecourse debt was also 21.0069 percent or $364,763.81 (21.0069% of $1,736,400). In a sale or exchange of an interest in a partnership, the portion of the partnership's liabilities with respect to such interest is treated in the same manner as liabilities in connection with the sale or exchange of property not associated with a partnership. Sec. 752(d). See also Commissioner v. Tufts,461 U.S. 300 (1983). Where property which is subject to a nonrecourse debt is transferred in a sale or exchange, the amount realized includes the amount of the debt to which the property is subject. Crane v. Commissioner,331 U.S. 1 (1947); Commissioner v. Tufts,supra.Accordingly, petitioner's amount realized will include the $364,763.81 share of Sherry's nonrecourse liability. See sec. 1.1001-2(c) Ex. 3, Income Tax Regs. Petitioner had *24 a split holding period in the 121 LPUs he exchanged on December 31, 1980. The 1978 block of LPUs was acquired in 1978, and the 1980 block of LPUs was acquired in November and December of 1980. Section 741 provides the general rule that gain or loss from the sale or exchange of a partnership interest shall be treated as a gain or loss from the sale or exchange of a capital asset. Under this general rule, the gain or loss recognized by petitioner with respect to the exchange of his LPUs was a capital gain or loss. Whether a capital gain or loss from a sale or exchange of a partnership interest is long-term or short-term is determined by reference to the date of acquisition of the partnership interest sold or exchanged. Lehman v. Commissioner,7 T.C. 1088 (1946). Since petitioner held the 1978 block of LPUs for more than one year, the capital gain or loss from their exchange will be long-term. Sec. 1222(3); Sec. 1222(4). Since petitioner held the 1980 block of LPUs for less than one year, the capital gain or loss from their exchange will be short-term. Sec. 1222(1); Sec. 1222(2). To properly determine the amount of gain or loss from the exchanges of the two blocks of LPUs, the amount *25 realized will have to be allocated between the 1978 block of LPUs and the 1980 block of LPUs. See Morris Investment Corp. v. Commissioner,156 F.2d 748 (3d Cir. 1946). The amount realized with respect to the exchange is $409,182.91 ($44,419.10 worth of condominium apartments and $364,763.81 relief of liabilities). Allocating this amount realized between the two blocks of LPUs according to their respective fair market values, $64,251.86 ($6,974.90 worth of condominium apartments and $57,276.96 relief of liabilities) of the amount realized is attributable to the 1978 block of LPUs and $344,931.05 ($37,444.20 worth of condominium apartments and $307,486.85 relief of liabilities) of the amount realized is attributable to the 1980 block of LPUs. [13] *26 At the time petitioner disposed of his 121 LPUs, Sherry had $43,165 worth of accounts receivable. An exception to the general rule of section 741 that the gain or loss from a sale or exchange of a partnership interest shall be treated as a gain or a loss from a sale or exchange of a capital asset is found in section 751. Section 751(a) states that the amount of any money or the fair market value of any property received in the transfer of a partnership interest which is attributable to unrealized receivables or substantially appreciated inventory shall be considered an amount realized from the sale or exchange of property other than a capital asset. Section 751(c) states: the term "unrealized receivables" includes, to the extent not previously includible in income under the method of accounting used by the partnership, any rights (contructual or otherwise) to payment for -- (1) goods delivered, or to be delivered, to the extent the proceeds therefrom would be treated as amounts received from the sale or exchange of property other than a capital asset, or (2) services rendered, or to be rendered. [14]
Respondent correctly notes that Sherry's *27 accounts receivable were not included in Sherry's gross income but incorrectly concludes that such accounts receivable are unrealized receivables. To be an unrealized receivable, an account receivable, in addition to not being included in the partnership's income, must arise from property delivered or to be delivered, where such property is not or is not treated as a capital asset, or from services rendered or to be rendered. Here, over 98% of the accounts receivable balance was attributable to Sherry's right to reimbursement from condominium apartment owners of such owners' proportionate shares of property taxes billed to Sherry. The accounts receivable arise from reimbursements, not property or services; accordingly, they are not unrealized receivables. The parties have stipulated that $9,067.62 is petitioner's share of "unrealized partnership receivables of $43,165." The amount of $43,165 recited in the stipulation and respondent's argument on brief *28 clearly indicate that the source of Sherry's unrealized receivables referred to in the stipulation was its accounts receivable. We have already held that Sherry's accounts receivable were not unrealized receivables. Where, as here, stipulated facts are clearly contrary to the facts disclosed in the record, we are not bound by the stipulated facts. Jasionowski v. Commissioner,66 T.C. 312, 318 (1976); Seatree v. Commissioner,25 B.T.A. 396, 401 (1932). Accordingly, we are not bound to the parties' atipulation to the extent it purports to establish that Sherry had unrealized receivables or that petitioner's share of Sherry's unrealized receivables was $9,067.62. Our holding with respect to this issue is here especially appropriate since the stipulation is not free from ambiguity and the petitioner is proceeding pro se. No portion of petitioner's amount realized is attributable to unrealized receivables. Summary and Calculation of Gain or Loss
Petitioner purchased $220,588 worth of the condominium apartments. No gain or loss was recognized to petitioner from this portion of the transaction. Petitioner exchanged the 1978 block of LPUs for $6,974.90 worth of condominium apartments. Petitioner's *29 amount realized includes the $6,974.90 fair market value of the property received and the $57,276.96 amount of liabilities to which the property transferred was subject. Petitioner's basis in the property transferred was $69,657.85. Accordingly, petitioner realized and recognized a loss of $5,405.99. This loss is a long-term capital loss. Petitioner exchanged the 1980 block of LPUs for $37,444.20 worth of condominium apartments. Petitioner's amount realized includes the $37,444.20 fair market value of property received and the $307,486.85 amount of liabilities to which the property transferred was subject. Petitioner's basis in the property transferred was $344,961.32. Accordingly, petitioner realized an recognized a loss of $30.27. This loss is a short-term capital loss. [15] *30 Decision will be entered under Rule 155.
Footnotes
1. Our references to "petitioner," in the singular, refer only to Robert Z. Aliber.↩
2. The limited partnership units will hereinafter be referred to as "LPUs" and the 19 LPUs purchased by petitioner in 1978 will hereinafter be referred to as the "1978 block of LPUs."↩
3. These 102 LPUs purchased by petitioner will hereinafter be referred to as the 1980 block of LPUs.↩
4. The LPU sales contract indicates that DAI was acting on its own behalf in such contract. The parties have stipulated that this contract "constituted a sale at arm's length to DAI as a partner, not a distribution in liquidation of petitioner's partnership interest." ↩
5. The amount of $82,280 indicates that DAI paid $680 for each LPU. This price per LPU was determined by considering the number of LPUs owned by petitioner and the aggregate list price of the condominium units he agreed to purchase from Sherry, $302,868. Had petitioner agreed to purchase no condominium units, DAI would not have bought petitioner's LPUs. Had petitioner agreed to purchase condominium units with an aggregate list price of $1,210,000, DAI would have paid $1,000 for each of petitioner's LPUs.
6. The agreement to purchase and the closing of the purchase are hereinafter collectively referred to as the "condominium purchase contract."↩
7. These bases include each block's proportionate share of Sherry's nonrecourse liabilities. The basis for the 1978 block of LPUs also reflects the allocable share of Sherry's losses from 1978, 1979, and 1980 in the amount of $6,619.↩
8. Actually, respondent originally determined a deficiency of $12,810.00. However, $2,464.44 of the deficiency was attributable to unrelated issues which have been resolved.↩
9. Respondent concedes that he has the burden of proof with respect to the increased deficiency.↩
10. See also Brown v. Commissioner,10 B.T.A. 1036 (1928); Mathis v. Commissioner,T.C. Memo. 1986-34; and Freedom Newspapers, Inc. v. Commissioner,T.C. Memo. 1977-429↩.
11. Unless an exception is applicable, the realized gain or loss shall be recognized. Sec. 1001(c)↩. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the year at issue.
12. Petitioner's 21.0069 percent of Sherry's profits was determined as follows: 21.0069% = 121 LPUs owned by petitioner/288 total number of LPUs X 50% interest of limited partners in Sherry's profits and losses.↩
13. The arithmetic is as follows: $64,251.86 = $6,974.90 FMV of 19 LPUs/$44,419.10 FMV of 121 LPUs X $409,182.91 total amount realized. $6,974.90 = $6,974.90/$44,419.10 X $44,419.10 amount realized attributable to condominium apartments. $57,276.96 = $6,974.90/$44,419.10 X $364,763.81 amount realized attributable to relief of debt. $344,931.05 = $37,444.20 FMV of 102 LPUs/$44,419.10 X $409,182.91 $37,444.20 = $37,444.20/$44,419.10 X $44,419.10 $307,486.85 = $37,444.70/$44,419.10 X $364,763.81↩
14. Section 751(c)↩ lists other items, not here relevant, which are also "unrealized receivables." The parties have stipulated that no portion of the amount realized by petitioner was attributable to substantially appreciated inventory.
15. In closing, we note that petitioner, though representing himself, was partially successful before this Court. His partial success was extracted from the efforts of himself, respondent, and this Court. Had petitioner obtained qualified assistance in and early stages of his controversy with respondent, we feel confident that the controversy could have been resolved at an administrative level, thereby conserving much of the effort expended by petitioner and respondent and all of the effort expended by this Court.