LAKESIDE IRRIGATION COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96745. Promulgated April 23, 1940.

*Charles F. Byers, Esq.*, for the petitioner.
*Wilford H. Payne, Esq.*, for the respondent.

894

OPINION.

BLACK: The question which we have to decide in this proceeding may be stated, thus: Where petitioner corporation, whose stock is closely held by one family, sold at one time to one of its stockholders owning directly or indirectly within the definition of section 24 (a) (6), Revenue Act of 1936, more than 50 percent of the capital stock thereof four blocks of stock at market prices which resulted in gains as to two of the stocks and losses as to the other two, but a slight net gain on the entire transaction, are the gains subject to tax and the losses unallowable as deductions from income under the provisions of section 24 (a) (6) of the Revenue Act of 1936?[1]

Petitioner, by an appropriate assignment of error, contests the action of the Commissioner in taxing it with the profits from the sales of the Reed Roller Bit and the Dr. Pepper stocks without

---

[1] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

\* \* \* \* \* \* \*

(6) Loss from sales or exchanges of property, directly or indirectly, (A) between members of a family, or (B) except in the case of distributions in liquidation, between an individual and a corporation in which such individual owns, directly or indirectly, more than 50 per centum in value of the outstanding stock. For the purpose of this paragraph— (C) an individual shall be considered as owning the stock owned, directly or indirectly, by his family; and (D) the family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants.

allowing as an offset the losses from the sale of the Columbia Gas and the North American Aviation stocks. Petitioner relies upon the following points in support of its assignment of error:

I. That the sale made by Petitioner on April 28, 1936, was of 1,050 shares of stock sold in one transaction and for one price, $26,737.50, for stock that cost petitioner $26,388.00 resulting in a gain of $349.50 and this gain was correctly reported by Petitioner on its income tax return, there being no loss whatever in the transaction.

II. That Section 117 (d) Revenue Act of 1936 does not limit gains made on sales neither does it require taxpayers to forego more beneficial sales because of the family relationship of the purchaser.

III. That the word "loss" as used in Section 24 (a) (6) Revenue Act of 1936 is a relative term and is directly opposed to and offset by gains from the same or similar transactions.

We shall treat all three of petitioner's points together, inasmuch as they are closely related. The Commissioner, in explanation of his treatment of the transaction, states in his deficiency notice as follows:

This office holds that the disposition of each block of stocks and bonds represents a separate sale or exchange; that the losses arising from the separate sales or exchanges are governed by the provisions of section 24 (a) (6) of the Revenue Act of 1936 and, therefore, constitute unallowable deductions, and, as such, are not to be applied to reduce the gains from the sales or exchanges of other assets.

We think the Commissioner must be sustained, on the authority of our decision in *Norman Cooledge*, 40 B. T. A. 110. In that case the taxpayer, as stockholder of a certain corporation, received an aggregate amount of cash in complete liquidation of his stock, which amount exceeded the aggregate cost basis of his stock. The taxpayer had acquired his stock at various times and at various prices. Some of it had cost him more than the price which he received in liquidation, and some of it had cost him less. In figuring his net taxable gain on the liquidation, the taxpayer contended for the right to treat all the stock together as one block and to offset the gains on that part of his stock which he had purchased at less than he received in the liquidation by losses on that part of the stock which had cost him more than he had received in liquidation.

We held against this contention of the taxpayer, holding that under section 115 (c) of the Revenue Act of 1934 petitioner must return for taxation the entire amount of his gain on that part of his stock where he had a gain, without reference to the percentages provided in section 117 of the Revenue Act of 1934, and that his losses from the liquidation of the stock must be limited as provided in section 117.

It is true, of course, that the sections of the statute which we had under consideration in the *Cooledge* case, *supra*, were not the same as we have in the instant case, but we think the governing principle

treated separately in determining gain or loss on its sale. We think is the same, which is that each separate piece of property must be that principle holds good whether several pieces of property are sold in one transaction or in several separate transactions.

Cf. *Taylor Securities, Inc.*, 40 B. T. A. 696. In that case one of the assignments of error was that the Commissioner erred:

> * * * in not offsetting losses sustained on sales of securities in the United States against gains on similar transactions in determining the amount of petitioner's taxable income from such transactions for all the years.

In that case the taxpayer was a foreign corporation which had not filed any income tax return prior to the mailing of the Commissioner's notice of deficiency. We held that the Commissioner acted properly in taxing the taxpayer with all income from sources within the United States and in allowing no deductions, including deductions from losses from sales of stock in the United States, because of the provisions of section 233 of the Revenue Acts of 1928, 1932, and 1934. We refused the taxpayer's contention that its gains from the sale of shares of stock in the United States should be automatically offset by losses from sales of shares of stock in the United States during the same taxable years.

In *Frank C. Deering*, 40 B. T. A. 984, we did use some language which would seem to approve the contention which the petitioner is making in the instant case. That language was as follows:

> In his determination of a capital gain in this case the respondent would treat the transactions by which the petitioner acquired the annuities in exchange for property as being a separate sale at the stipulated fair market value of the securities on December 30, 1935, of each lot of stock or bonds transferred to the wife, son, and daughter. It is only in this manner that a capital gain can be found to have resulted. We do not think that this premise is warranted. The petitioner transferred for the annuity in each case securities which cost him more than their fair market value on the date of the transfer and we do not think that the transactions may be resolved into their component parts, as has been done by the respondent in this case. * * *

The language above quoted was *dicta* in that case, and is not controlling here. The *Deering* case was decided in favor of the taxpayer, not upon the reasoning contained in the foregoing paragraph, but upon the holding that the promises for annuities were by individuals, and that these promises had no recognizable fair market value and there could be no gain or loss in such transactions.

Petitioner in its brief lays much stress on the Commissioner's instructions relating to the reporting of capital gains and losses which accompanied the income tax return which petitioner filed for 1936. The instructions quoted in petitioner's brief were as follows:

> Capital Gains and Losses. Report sales or exchanges of capital assets in Schedule B and enter the net amount of gain or loss as Item 11 (Capital losses are allowable only to the extent of $2,000 plus capital gains. Therefore, if the

total amount of capital losses is in excess of the total amount of capital gains, the amount to be entered as Item 11 may not exceed $2,000). (See Section 117 relating to capital gains and losses.) Describe the property briefly and state the actual consideration or price received or the fair market value of the property received in exchange.

It is undoubtedly true that in the preparation of schedule B of petitioner's income tax return, the Commissioner authorized the taxpayer to offset gains from the sale of shares of stock by losses from sales of shares of stock and carry forward only the net result as item 11 of petitioner's income tax return. But it is perfectly plain that in authorizing losses to offset gains, the Commissioner means only those losses which are recognized as deductions by the statute. This is made plain by the language of the last paragraph in item 11 of the Commissioner's instructions, which the petitioner has apparently overlooked. That last paragraph reads:

No deduction shall. be allowed in respect of loss from sales or exchanges of property, directly or indirectly, except in the case of distributions in liquidation, between an individual and a corporation in which such individual owns, directly or indirectly, more than 50 percent in value of the outstanding stock. (See section 24 (a) (6).)

The statute referred to by the Commissioner in his instructions, and which disallows petitioner the loss which it claims here, seems to be plain and unambiguous. Even though its application in the instant case may seem harsh in view of the fact that the transaction seems to have been one made for purely business reasons and not to establish a tax loss, we do not feel that we have the power to relieve petitioner from its terms. We must give effect to laws as Congress has written them, and if any changes are to be made Congress must make them.

Reviewed by the Board.

*Decision will be entered under Rule 50.*