ESTATE OF EDWIN H. JOHNSON, DECEASED, HARRIET BLU JOHNSON, EXECUTRIX, AND HARRIET BLU JOHNSON, PETITIONERS, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 89835. Filed May 27, 1964.

*E. L. Carpenter*, for the petitioners.
*John H. Menzel*, for the respondent.

OPINION

SCOTT, *Judge:* Respondent determined a deficiency in petitioners' income tax in the amount of $4,513.16 for the calendar year 1956.

Certain issues raised by the pleadings have been disposed of by agreement of the parties, leaving for our decision the following:

Whether the amount of the excess of cost consisting of direct labor, material, and overhead allocation over sales price of certain specific sales made by Edwin H. Johnson and Harriet Blu Johnson to the wholly owned corporation of Edwin H. Johnson, whose estate is the other petitioner herein, may be used to reduce other income, or as a deduction from income by petitioners.

All of the facts have been stipulated and are found accordingly.

Edwin H. Johnson and Harriet Blu Johnson were during the calendar year 1956 husband and wife residing in Dayton, Ohio. They filed a joint Federal income tax return for the calendar year 1956 with the district director of internal revenue at Cincinnati, Ohio.

Edwin H. Johnson died on April 19, 1962, after the filing of the petition in this case, and Harriet Blu Johnson was appointed as executrix of his estate.

Edwin H. Johnson (hereinafter referred to as Edwin) and Harriet Blu Johnson (hereinafter referred to as Harriet) were married in the spring of 1954.

Harriet inherited a machine shop located in Fort Lauderdale, Fla., from her first husband, who had died during the year 1953. This machine shop had been operated by Harriet's first husband up until the time of his death and its operation was suspended from that time until November 15, 1955, at which time Edwin and Harriet recommenced operations.

This operation was an individual proprietorship under the name H.E.K. Tool and Manufacturing Co. (hereinafter referred to as H.E.K.), producing machine tools.

At all times here material, Edwin was a sole shareholder in Jandor, Inc. (hereinafter referred to as Jandor), an Ohio corporation engaged in a metal stamping business in Dayton, Ohio.

During the year 1956 Jandor obtained approximately 80 orders from various of its customers which orders totaled $33,991.93. After receiving each order Jandor placed an order with H.E.K. and H.E.K. performed the work required on the order. When its work was completed, H.E.K. shipped the completed order and sent Jandor an invoice for each completed order. Jandor then sent its own invoice to the customer.

Of the orders placed by Jandor with H.E.K. and invoiced by H.E.K. to Jandor when the order was completed and shipped, 46 of the transactions resulted in a loss to H.E.K. computed by the excess of cost of direct labor, material, and overhead incurred by H.E.K. over H.E.K.'s selling price to Jandor in the total amount of $10,675.10, and the balance of the orders resulted in an excess of sales price over costs of direct labor, material, and overhead allocation in the amount of $4,655.33. The total sales price of Jandor's orders to H.E.K. was $32,227.96.

During the year 1956, H.E.K. completed 15 orders to others than Jandor and had total receipts of $2,001.37 from these orders and total costs of direct labor, material, and overhead of $2,555.78 resulting in an excess of costs of these items over receipts of $554.41.

Edwin and Harriet on their joint income tax return for the year 1956 showed as a reduction in arriving at their taxable income a loss

in the amount of $12,117.44 from the operation of H.E.K., which loss was computed as follows:

| | | |
|---|---:|---:|
| Sales | | $34, 131. 22 |
| Production costs: | | |
| Material, freight, etc | $9, 625. 78 | |
| Direct labor | 13, 677. 13 | |
| | $23, 302. 91 | |
| Factory burden: | | |
| Indirect labor | 1, 489. 65 | |
| Factory supplies | 2, 804. 47 | |
| Repair and maintenance | 270. 30 | |
| Payroll taxes | 1, 092. 68 | |
| Other taxes and licenses | 827. 83 | |
| Utilities | 505. 78 | |
| Insurance | 710. 79 | |
| Depreciation | 3, 337. 86 | |
| | 11, 039. 36 | |
| | | 34, 342. 27 |
| Gross profit or loss | | (211. 05) |
| Administrative expenses | | 11, 906. 39 |
| Profit or loss | | (12, 117. 44) |

Respondent in his notice of deficiency increased petitioners' income by $11,695.11 with the following explanation:

(b) It has been determined that losses in the amount of $10,845.13 as shown in Exhibit A are not allowable in computing profit or loss of H.E.K. Tool and Manufacturing Company under the provisions of Section 267 (a) (1) of the Internal Revenue Code of 1954. Further, it has been determined that the loss should be decreased by the amount of $849.98 which represents overhead expense allocable to the ending inventory.[1]

Petitioners take the position that section 267 (a) (1) of the Internal Revenue Code of 1954,[2] which provides that no deduction shall be allowed in respect of losses from sales between certain related persons, is not applicable to the orders placed by Jandor with H.E.K. since the differences between the costs and amount billed by H.E.K. to Jandor for the items represent cost of goods sold and not losses on sales.

Petitioners admit that Edwin, Harriet, and Jandor were persons specified in section 267(b) and that under section 267(a) (1) no de-

[1] By stipulation the parties have agreed that the correct amount of the total losses computed, as we have set out in the findings, was $10,675.10, instead of $10,845.13, and have agreed that the ending inventory should be increased by the amount of $849.98 representing overhead expenses allocable thereto.

[2] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.
SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS.
    (a) DEDUCTIONS DISALLOWED.—No deduction shall be allowed—
        (1) LOSSES.—In respect of losses from sales or exchanges of property (other than losses in cases of distributions in corporate liquidations), directly or indirectly, between persons specified within any one of the paragraphs of subsection (b).

duction is allowable with respect to sales between them. Petitioners contend only that the amounts disallowed by respondent are not deductions within the meaning of section 267(a)(1) but are a part of cost of goods sold. In support of their view, petitioners rely on *Lela Sullenger*, 11 T.C. 1076 (1948); *Commissioner* v. *Weisman*, 197 F. 2d 221 (C.A. 1, 1952), affirming a Memorandum Opinion of this Court; *Hofferbert* v. *Anderson Oldsmobile*, 197 F. 2d 504 (C.A. 4, 1952); and *Jones* v. *Herber*, 198 F. 2d 544 (C.A. 10, 1952).

Petitioners question the constitutionality of any provision of the Internal Revenue Code which would tax receipts as distinguished from gross income, pointing out that in *Lela Sullenger, supra,* we stated that the Commissioner has always recognized, "as indeed he must to stay within the Constitution, that the cost of goods sold must be deducted from gross receipts in order to arrive at gross income." Petitioners equate taxing receipts to disallowing the loss as computed by subtracting from the selling price of each order sold at a loss, the agreed costs of such order consisting of labor and material costs plus overhead allocation.

To accept petitioners' argument that section 267(a) does not disallow losses from a sale of property where the receipt from the sale does not exceed the cost of the property would make this section totally meaningless. A loss from the sale of property arises when a taxpayer sells property at less than his basis therein. In many, if not most, instances of such sales, the sales price is the seller's gross receipts from the sale and his cost of the property is his basis therein. In a business involving reselling purchased property such as the business conducted by the taxpayer in *Lela Sullenger*, the cost of the property purchased is usually the major item and sometimes the sole item constituting "cost of goods sold." In a manufacturing operation "cost of goods sold" is more difficult to determine since the items necessary to produce the salable article as distinguished from the other ordinary and necessary expenses of operating the business may not be easily ascertainable. However, in a going business the "cost of goods sold" when determined, would be the very least amount that could constitute the seller's basis in the goods or property sold. See the discussion of what constitutes cost of goods sold in *Hofferbert* v. *Anderson Oldsmobile, supra* at 505, 506, and 508. Therefore in a going business if a sale is made between persons specified in section 267(b) which results in a loss determined by subtracting from the sales price of the property the "cost of goods sold" such loss would be the minimum amount of "loss" from such sale for which no deduction is to be allowed. This fact is amply demonstrated in the instant case by the difference in the overall gross loss of H.E.K. as shown on the schedule of profit or loss from the operation in the tax return filed by Edwin and Harriet and

the gross loss as computed from the stipulated exhibits which allocate more overhead costs to the various items sold than the amount included under "factory burden" on the tax return.

Petitioners' argument, therefore, comes down to an argument that section 267(a) does not apply to sales made in the ordinary course of a taxpayer's trade or business as distinguished from sales of capital assets, for so applied it would be unconstitutional as a tax on gross receipts. This argument would be equally applicable to any sale. When any property is sold for a price less than its cost, the taxpayer making the sales does not recover his entire investment in the property, but to disallow the loss is not to tax gross receipts. In *Weather-Seal Manufacturing Co.*, 16 T.C. 1312 (1951), affirmed per curiam 199 F. 2d 376 (C.A. 6, 1952), we approved the disallowance of deduction for wages paid in violation of the Emergency Price Control Act of 1942 in accordance with a statutory provision authorizing such disallowance in computing taxable income even though the wages were direct wages treated on the tax return forms and for general accounting purposes as a part of cost of goods sold. In *Weather-Seal Manufacturing Co.*, *supra*, as in the instant case the taxpayer contended that any law disallowing an item constituting a part of "cost of goods sold" was unconstitutional as taxing gross receipts instead of income which includes only the gains or profits derived from such gross receipts. In the instant case as in *Weather-Seal Manufacturing Co.*, *supra*, the statutory provision disallowing a deduction does not place a tax on gross receipts. In the instant case, the result of having the deductions for the loss disallowed is that petitioners are not permitted to reduce their income from other sources by the loss on the sales. Petitioners have no income from the loss transactions to be taxed and their gross receipts from the loss sales are not added into their income. In the instant case, no receipts or income from any sales by H.E.K. are included in petitioners' income since even after disallowance of the losses on all loss sales by H.E.K. to Jandor, there remains some net loss from the operations of H.E.K. to be used to reduce the other income of Edwin and Harriet. However, even if the net result of H.E.K.'s operations had been a profit after disallowing the deduction for the loss sales to Jandor, which profit Edwin and Harriet would have been required to include in their gross income, the disallowance of the deductions for the losses would not constitute the taxing of gross receipts from such loss sales. Even under such facts, no receipts from the sales made at a loss are being subjected to tax.

Accepting petitioners' argument for what it in substance is, that is, that sales in the ordinary course of a taxpayer's business are not subject to the provisions of section 267(a), we disagree with petitioners' position. Section 267(a) makes no such exception. Its coverage is broad. It is applicable even where "a hardship may result * * * where the

446

transaction is in entire good faith." *Nathan Blum,* 5 T.C. 702 (1945).

Petitioners' sole argument against respondent's determination is that the amount disallowed is not a deduction of a loss on the sale of property within the meaning of section 267. They do not otherwise contest respondent's adjustment except as to the stipulated reduction in the amount thereof. Petitioners refer to the net loss being only $6,019.77, without stating the materiality of such reference to their argument. If this reference is intended as a contention that respondent should have offset the gains on some sales to Jandor against the losses on others, petitioners' position is contrary to our holding in several cases. In *Jacob M. Kaplan,* 21 T.C. 134 (1953), we held that where certain shares of stock were sold at a loss and others at a gain between related parties, that the losses would be disallowed and the gains includable in taxable income. We reached the same conclusion in *Frank C. Engelhart,* 30 T.C. 1013 (1958), with respect to two separate sales of mixed metals between related parties. As we stated in *Frank C. Engelhart, supra,* there is no ambiguity in the statute. Section 267 specifically provides that no deduction shall be allowed in respect of losses from sales of property between specified persons. It does not provide that gains from such sales shall not be recognized. The parties in the instant case have in effect stipulated that each order was a separate sale and petitioners do not contend otherwise. Forty-six of these sales were at a loss and it is the aggregate of these losses which respondent has disallowed. We approve such disallowance as proper under section 267 (a) of the Internal Revenue Code of 1954.

*Decision will be entered under Rule 50.*