UNITED STATES HOLDING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 92152.    Filed June 9, 1965.

*C. Hugh Friedman,* for the petitioner.
*Michael P. McLeod,* for the respondent.

OPINION

FAY, *Judge:* The Commissioner determined deficiencies in income tax for the taxable years 1954 and 1956 against Pasadena First National Bank, a transferor corporation, in the respective amounts of $22,983.70 and $295,430.78.    This proceeding involves the liability of the petitioner as transferee of the assets of the aforementioned trans-

feror corporation.[1]  The parties by agreement have disposed of certain issues raised by the pleadings.  The first issue for decision is whether the proposed deficiencies are improper, illegal, and invalid because of the Commissioner's alleged violation of section 7605(b) of the Internal Revenue Code of 1954[2] by conducting a second examination of the transferor corporation without giving written notice thereof.  If the issue is decided in favor of respondent, there remains the question of whether certain losses realized by the transferor corporation on the sale of some of its assets during the process of liquidation should be recognized.

All of the facts have been stipulated, are so found, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.  Those necessary to an understanding of the issues presented are recited below.

United States Holding Co. (hereinafter referred to as petitioner) is a corporation organized and existing under the laws of the State of California, with its principal office and place of business in San Diego, Calif.  Petitioner is the transferee of assets of Pasadena First National Bank.  Petitioner filed its Federal income tax returns for the years 1954 and 1956 with the district director of internal revenue at Los Angeles, Calif.

Pasadena First National Bank, transferor (hereinafter referred to as Pasadena), was a national bank organized under the laws of the United States with its principal offices located in Pasadena, Calif.

Pasadena timely filed its Federal income tax returns on the cash basis for the year 1954 and on an accrual basis for the year 1956 with the district director of internal revenue at Los Angeles, Calif., and the taxes shown to be due on such returns were paid at the time of filing.

The Commissioner examined the books and records of Pasadena for the years 1954, 1955, and 1956, and the findings of said examination were set out in a revenue agent's report dated August 22, 1957.

The adjustments proposed in the revenue agent's report of August 22, 1957, were settled by administrative procedure.

Prior to July 18, 1960, the Commissioner, without properly notifying petitioner in writing that an additional inspection was necessary, requested the books and records of Pasadena for the purpose of reexamination.  The petitioner refused to make the books and records available to the agents of the Commissioner.

On July 18, 1960, a letter of necessity of reexamination of Pasadena was served upon M. N. Wilson, president of United States National

---

[1] Petitioner concedes that if it is determined that the transferor corporation is liable for the deficiencies in income tax for the years here involved, petitioner is liable as transferee.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.

Bank of San Diego and the purchaser of the assets of Pasadena. The letter stated:

July 14, 1960

Pasadena First National Bank
Pasadena, California

Gentlemen:

While it is the policy of the Internal Revenue Service to make as few inspections of books of account and records of taxpayers as possible, it is deemed necessary before finally closing your income tax case, to make a reinvestigation of your books and records for the years 1954 and 1956 in order to properly verify your returns for those years. A reexamination, therefore, will be made.

Your cooperation in permitting our representatives access to all of your books and records will be appreciated. I trust this will not cause you any inconvenience.

This notice is sent in compliance with Section 7605 (b) of the Internal Revenue Code of 1954.

Very truly yours,

(S) HAROLD HAWKINS
*Regional Commissioner*

Wilson was not, on the date said notice was served nor at any time, an officer, director, or shareholder of Pasadena or the petitioner, nor was he authorized by Pasadena, or its liquidating agent, to accept service of process or any other official notification, or in any other manner act on behalf of, or as an agent for, Pasadena, its liquidating agent, or petitioner.

Subsequent to service of the notification on July 18, 1960, the agents of the Commissioner, though requested by petitioner, failed or refused to issue or have issued legal process requiring the production of the books and records of Pasadena.

The Commissioner was denied access to the books and records of Pasadena, at no time were such books and records made available to the Commissioner for reexamination, and at no time has the Commissioner made a reexamination of such books and records.

Petitioner subsequently made certain books and records available to respondent's counsel for the limited purpose of reaching agreement for the stipulation of facts. It is agreed that petitioner did not thereby waive any right to contend that the deficiency proposed by the Commissioner is illegal, invalid, and void because of the Commissioner's failure to comply with the provisions of section 7605 (b).

During the period not more than 12 months immediately preceding November 19, 1956, petitioner acquired by purchase the stock of Pasadena, representing in excess of 80 percent of the total combined voting power of all classes of stock entitled to vote and in excess of 80 percent of the total number of shares of all classes of stock. At all times pertinent hereto, petitioner was the owner of Pasadena stock as set out above.

Pasadena entered into a purchase and sale agreement dated October 31, 1956, with the United States National Bank of San Diego (hereinafter referred to as San Diego) whereby San Diego agreed to purchase all assets of Pasadena on hand as of the close of business of Pasadena on December 7, 1956, and to assume the liabilities of the seller under the terms and conditions as set forth in the agreement.

At a special meeting of the shareholders of Pasadena held November 19, 1956, the following resolution was adopted:

RESOLVED, That Pasadena-First National Bank, Pasadena, California, be placed in voluntary liquidation, under the provisions of sections 5220 and 5221 of the United States Revised Statutes (12 U.S.C. 181, 182) to take effect at the close of business 6:00 o'clock p.m., December 7, 1956, and that C. Arnholt Smith be appointed liquidating agent of said bank.

On October 15, 1956, and November 15, 1956, prior to the resolution to dissolve, Pasadena sold certain securities, as such term is defined by section 582(c), at a total loss of $107,840.14.

On November 30, 1956, December 3 and 5, 1956, subsequent to the resolution to dissolve, Pasadena sold certain securities, as such term is defined by section 582(c), at a total loss of $248,634.51. Additional assets were sold subsequent to the resolution at a gain of $852,312.35.

At the close of business on December 7, 1956, all of the remaining assets of Pasadena were sold to, and its liabilities were assumed by, San Diego in accordance with the terms and conditions of the agreement of October 31, 1956.

Most of the losses in issue herein, sustained on the sale of securities by Pasadena, were sustained as a result of a declining market between March 1956, the date of the purchase of stock by petitioner, and the dates on which such securities were sold.

On March 13, 1957, subsequent to the sale of assets and in accordance with the agreement of October 31, 1956, all of the assets of Pasadena (cash of $1,770,643.20) were distributed to petitioner in complete liquidation.

Regarding the first issue, petitioner argues that the failure of the respondent to comply with the written-notice requirement of section 7605(b) renders the deficiency notice invalid. In the alternative, petitioner maintains that even if the notice of deficiency is not invalid, it is arbitrary and excessive, thereby placing the burden of proof as to establishing the correct amount of the tax on respondent.

Respondent, on the other hand, contends that since he did not re-examine the books and records of Pasadena, the written notice provided for in section 7605(b) was not required. In addition, respondent claims that his notice of deficiency was not arbitrary and that the burden of proof in this proceeding is on petitioner.

We agree with respondent.

Section 7605 (b) provides as follows:

(b) RESTRICTIONS ON EXAMINATION OF TAXPAYER.—No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.

The section contains two prohibitions. The first pertains to the prohibition against "unnecessary examination or investigations." The second prohibition pertains to the reexamination of the taxpayer's books and records without giving prior written notice thereof. It is this latter prohibition that petitioner claims respondent has violated,[3] thereby rendering his notice of deficiency totally invalid. We need not here decide whether the failure of respondent to file prior written notice of his intent to reexamine the books of a taxpayer would render a deficiency notice invalid,[4] for we find that respondent has not in any way violated section 7605 (b).

The prohibition which respondent allegedly violated by its express terms applies only to the books and records of the taxpayer. *DeMasters* v. *Arend*, 313 F. 2d 79 (C.A. 9, 1963). The facts of the instant case, which were fully stipulated to by the parties, clearly state that respondent did not reexamine the books and records of Pasadena. In fact, petitioner refused to make them available. On these facts, which are the only facts of record before us, we cannot say that respondent has in any way violated the terms of section 7605 (b).

In his opening statement to this Court, petitioner's counsel asserted that respondent did, in fact, reexamine Pasadena's books and records while they were in the hands of third parties. Petitioner, through counsel, further asserted that the third party records from which respondent allegedly obtained his information were, in fact, the books and records of Pasadena. Whether this is true or not cannot be determined from the facts before this Court. The blanket assertions of counsel in an opening statement do not constitute evidence before this Court, nor do they in any way diminish the effect of the stipulated facts. *Smoot Sand & Gravel Corp.* v. *Commissioner*, 274 F. 2d 495, 498 (C.A. 4, 1960), affirming a Memorandum Opinion of this Court, certiorari denied 362 U.S. 976 (1960). Accordingly, we hold

---

[3] Petitioner does not contend that the reexamination conducted by respondent was "unnecessary." See *DeMasters* v. *Arend*, 313 F. 2d 79 (C.A. 9, 1963) ; *Application of United States (Carroll)*, 246 F. 2d 762 (C.A. 2, 1957) ; *In Re Wood*, 123 F. Supp. 297, 303 (W.D. Ky. 1954).

[4] Compare *M. O. Rife, Jr.*, 41 T.C. 732, 751 (1964), on appeal (C.A. 5, July 23, 1964), and *Philip F. Flynn*, 40 T.C. 770 (1963), with *Reineman* v. *United States*, 301 F. 2d 267 (C.A. 7, 1962).

that respondent did not violate section 7605(b). See also *M. O. Rife, Jr.*, 41 T.C. 732 (1964), on appeal (C.A. 5, July 23, 1964).

We next approach petitioner's alternative position on this first issue. Petitioner, now recognizing that respondent did not reexamine its books or the books of Pasadena, contends that any deficiency notice issued by respondent must be arbitrary and erroneous, thereby placing the burden of proof as to the correct tax liability on respondent. Actually, what petitioner is really contending is that pretrial concession of certain issues by respondent is tantamount to an admission that his notice of deficiency was arbitrary. With this we cannot agree. We have stated numerous times that the concession of an issue or issues by respondent prior to or at trial does not destroy the presumptive correctness of his notice of deficiency as to the remaining issues. *Fada Gobins*, 18 T.C. 1159, 1168–1169 (1952), affirmed per curiam 217 F. 2d 952 (C.A. 9, 1954); *William O'Dwyer*, 28 T.C. 698, 705 (1957), affd. 266 F. 2d 575 (C.A. 4, 1959), certiorari denied 361 U.S. 862 (1959); and *Charles Oran Mensik*, 37 T.C. 703, 725 (1962), affd. 328 F. 2d 147 (C.A. 7, 1964), certiorari denied 379 U.S. 827 (1964). Other than the concession by respondent of certain adjustments,[5] we do not have before us any evidence indicating that respondent's notice is arbitrary or erroneous. *Philip F. Flynn*, 40 T.C. 770, 773 (1963). Accordingly, we hold that respondent's notice of deficiency was not arbitrary and that the burden of proof in this case is on petitioner.

The remaining issue for decision involves the determination of whether Pasadena recognized a loss on its sale of securities after the adoption of a plan to liquidate.

Petitioner argues that where a subsidiary corporation liquidates under section 332 [6] and where the basis of the assets in the hands of

---

[5] It is noted that as part of the stipulation of facts, petitioner conceded certain adjustments made by respondent.

[6] SEC. 332. COMPLETE LIQUIDATIONS OF SUBSIDIARIES.

(a) GENERAL RULE.—No gain or loss shall be recognized on the receipt by a corporation of property distributed in complete liquidation of another corporation.

(b) LIQUIDATIONS TO WHICH SECTION APPLIES.—For purposes of subsection (a), a distribution shall be considered to be in complete liquidation only if—

(1) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and the owner of at at least 80 percent of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends) ; and either

(2) the distribution is by such other corporation in complete cancellation or redemption of all its stock, and the transfer of all the property occurs within the taxable year ; in such case the adoption by the shareholders of the resolution under which is authorized the distribution of all the assets of such corporation in complete cancellation or redemption of all its stock shall be considered an adoption of a plan of liquidation, even though no time for the completion of the transfer of the property is specified in such resolution ; or

the parent corporation is determined under section 334(b) (2),[7] then section 337(c) (2) (B) [8] permits the recognition by the subsidiary of any losses realized on the sale of its assets. Petitioner further maintains that under the facts of this case, Pasadena did realize a loss on the sale of securities.

Respondent, on the other hand, acknowledges that a loss may be recognized where section 337 (c) (2) (B) applies, but contends that Pasadena did not realize any loss which could be recognized. It is respondent's position that before a loss can be recognized, there must, in fact, be a realized loss. Respondent maintains that the tax consequences of sales of assets by a liquidating subsidiary after the adoption of the plan of liquidation are to be based upon the net effect of all such sales made within the 12-month period. That is, if after aggregating all the gains and losses from the various transactions, there results a net gain, as in this case, then there is no loss to be recognized under section 337 (c) (2) (B).

---

[7] SEC. 334. BASIS OF PROPERTY RECEIVED IN LIQUIDATIONS.

(b) LIQUIDATION OF SUBSIDIARY.—

\* \* \* \* \* \* \*

(2) EXCEPTION.—If property is received by a corporation in a distribution in complete liquidation of another corporation (within the meaning of section 332(b)), and if—

(A) the distribution is pursuant to a plan of liquidation adopted—

(i) on or after June 22, 1954, and

(ii) not more than 2 years after the date of the transaction described in subparagraph (B) (or, in the case of a series of transactions, the date of the last such transaction) ; and

(B) stock of the distributing corporation possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote, and at least 80 percent of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends)·, was acquired by the distributee by purchase (as defined in paragraph (3)) during a period of not more than 12 months, then the basis of the property in the hands of the distributee shall be the adjusted basis of the stock with respect to which the distribution was made. For purposes of the preceding sentence, under regulations prescribed by the Secretary or his delegate, proper adjustment in the adjusted basis of any stock shall be made for any distribution made to the distributee with respect to such stock before the adoption of the plan of liquidation, for any money received, for any liabilities assumed or subject to which the property was received, and for other items.

[8] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

(c) LIMITATIONS.—

\* \* \* \* \* \* \*

(2) LIQUIDATIONS TO WHICH SECTION 332 APPLIES.—In the case of a sale or exchange following the adoption of a plan of complete liquidation, if section 332 applies with respect to such liquidation, then—

\* \* \* \* \* \* \*

(B) if the basis of the property of the liquidating corporation in the hands of the distributee is determined under section 334(b)(2), this section shall apply only to that portion (if any) of the gain which is not greater than the excess of (i) that portion of the adjusted basis (adjusted for any adjustment required under the second sentence of section 334(b)(2)) of the stock of the liquidating corporation which is allocable, under regulations prescribed by the Secretary or his delegate, to the property sold or exchanged, over (ii) the adjusted basis, in the hands of the liquidating corporation, of the property sold or exchanged.

We agree with petitioner.

Both parties agree that the crux of this case hinges upon the interpretation of section 337(c)(2)(B). It therefore becomes necessary to understand the purpose behind section 337 and the reason why subsection (c) was included in the section. Of necessity, this also requires an understanding of the relationship between sections 332, 334 (b)(2), and 337(c)(2)(B).

In *Frank Verito*, 43 T.C. 429 (1965), we had occasion to discuss the purpose of section 337. We stated therein at page 439:

The purpose of the section was not to eliminate one level of taxation. This could be done without the aid of section 337. * * * The purpose of the section was aimed at eliminating the uncertainties attendant upon the Supreme Court decisions in *Court Holding Co.* and *Cumberland Pub. Serv. Co.* and to make moot the question as to whether a sale of assets was accomplished by the corporation or its stockholders.

See also *J. C. Penney Co.*, 37 T.C. 1013, 1017–1018 (1962), affd. 312 F. 2d 65 (C.A. 2, 1962).

Accordingly, section 337(a) provides that if a corporation adopts a plan of liquidation and within the next 12 months distributes all of its assets in complete liquidation, then "no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period." If the terms of the section are complied with, the effect of the section is to eliminate any tax at the corporate level and tax only the shareholders on liquidation. However, Congress did not intend the section to apply to every transaction falling within its terms. To do so might run afoul of other sections of the Code. Therefore, subsection (c) was written into the section to clearly establish that in certain situations section 337(a) was either not applicable or applicable to a limited extent.

Section 337(c)(1)(A) makes the provisions of section 337(a) inapplicable to sales or exchanges by a collapsible corporation as that term is defined in section 341(b). We said in *J. C. Penney Co.*, *supra* at 1019:

If section 337 were applicable to collapsible corporations, the provisions of section 341 would be nullified. A corporation could sell its assets, avoiding the recognition of gain under section 337, while the shareholders would escape section 341(a) because the corporation would have realized (though without recognizing) its gain, and hence would not be a collapsible corporation under section 341(b).

To prevent the nonrecognition of gain at both the corporate level and the shareholder level, section 337(c)(1)(B) made section 337 inapplicable to a liquidation governed by the provisions of section 333.

By the express terms of section 337(c)(2)(A), section 337 is made inapplicable to the liquidation of a subsidiary corporation under sec-

tion 332 whereby the basis of the assets of the subsidiary in the hands of the parent is determined under section 334(b)(1). That is, if the basis of the subsidiary's assets in the hands of the parent is the same as it would be in the hands of the subsidiary, section 337 does not apply. The reason for this becomes apparent when a comparison is made of the tax consequences involved in the liquidation of a subsidiary and other corporations prior to the enactment of section 337. If a subsidiary corporation prior to 1954 adopted a plan of liquidation, sold its assets, and then liquidated, gain or loss would be recognized at the subsidiary level but no tax would be imposed at the shareholder (parent corporation) level by virtue of section 112(b) of the Internal Revenue Code of 1939, the predecessor of section 332. If the same subsidiary distributed its assets in kind in complete liquidation, then it would recognize no tax, but the shareholder (parent) would recognize a tax when the assets were finally disposed of. Thus, whether or not the assets were sold by the subsidiary or parent, only one tax would result. Accordingly, a subsidiary corporation was not in the same position as other corporations prior to the enactment of section 337. Since the intent of Congress in passing section 337, as stated previously, was to eliminate double taxation which might result from the formal manner in which a sale was consummated, it seems apparent that Congress intended to leave the tax consequences of a subsidiary liquidation outside the ambit of section 337 except to a limited extent discussed *infra*. *J. C. Penney Co., supra* at 1021–1022.

This brings us to the question at issue, the interpretation of section 337(c)(2)(B). We have already stated that it was Congress' intent to leave a liquidation under section 332, where section 334(b)(1) applies, out of the ambit of section 337. Why then did Congress feel it necessary to bring within section 337 a liquidation under section 332 where section 334(b)(2) applies? The answer to this question is readily apparent when the purpose behind section 334(b)(2) is uncovered.

Section 334(b)(2) was enacted to incorporate into law the principle of the *Kimbell-Diamond Milling Co.* case, 14 T.C. 74 (1950), affirmed per curiam 187 F. 2d 718 (C.A. 5, 1951), certiorari denied 342 U.S. 827 (1951). S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 257 (1954). Stated simply, the rule is that if a corporation purchases 80 percent of the stock of another corporation and within 2 years after the purchase the subsidiary corporation adopts a plan of complete liquidation, then the basis of the assets of the subsidiary received by the parent corporation will be the price paid for the subsidiary's stock. The effect of this section is to treat the purchase of the subsidiary's stock as in reality a purchase of the subsidiary's assets.

Since the purpose of section 337 was to eliminate a double tax resulting from the formal way a transaction was carried out and since the codification of the *Kimbell-Diamond Milling Co.* case in section 334(b)(2) was to treat the purchase of stock equivalent to the purchase of assets, it was necessary to make section 337 apply to this situation, but only to a limited extent. *J. C. Penney Co.*, *supra* at 1020 fn. 17.

Section 337(c)(2)(B) provides in substance that where section 332 applies and basis is determined under section 334(b)(2), then section 337—

shall apply only to that portion (if any) of the gain which is not greater than the excess of (i) that portion of the adjusted basis * * * of the stock of the liquidating corporation which is allocable * * * to the property sold * * * over (ii) the adjusted basis, in the hands of the liquidating corporation, of the property sold * * *

Accordingly, it was the purpose of section 337(c)(2)(B) to limit the nonrecognition of gain to that portion of the subsidiary's gain attributable to the appreciation of its assets occurring prior to the purchase of its stock by the parent corporation. See Mertens, Law of Federal Income Taxation (Code Commentary), sec. 337(c)(2):2, p. 163.[9]

Our next inquiry is, what would be the tax consequences to a subsidiary which sells its assets for less than their adjusted basis? We are of the opinion that the realized loss to the subsidiary would be recognized by it, as section 337(c)(2)(B) limited the application of section 337 to "that portion (if any) of the gain." We feel this is entirely consistent with the purpose of sections 332, 334(b)(2), and 337. See *J. C. Penney Co.*, *supra* at 1023. Accordingly, we hold that where a subsidiary, after adopting a plan of liquidation, sells its assets for a loss and sections 332 and 334(b)(2) apply, then that loss is deductible by the subsidiary because the transaction is not governed by the provisions of section 337.

However, this is not the end of our inquiry. Respondent, acknowledging that a loss can be recognized, argues that in computing the loss, all the sales of assets by the subsidiary should be aggregated and if the net result is a loss, then, and only then, is there a recognizable loss. We do not agree with respondent.

Pasadena sold some securities after the adoption of its plan of liquidation for a loss of $248,634.51. Also after the adoption of the plan to liquidate, Pasadena sold other assets for a gain of $852,312.35. Respondent would have us net the two transactions together and, since they would result in a "net gain," he would have us find that there is no loss to be recognized. We believe this approach would frustrate the purpose of the section as we have set forth above and, furthermore,

---

[9] For an additional discussion of sec. 337(c)(2)(B) see MacLean, "Taxation of Sales of Corporate Assets in the Course of Liquidation," 56 Col, L. Rev, 641, 669 (1956).

this approach is inconsistent with the interpretation placed upon other sections of the Code which are, in our opinion, analogous to the section here involved.

There are numerous sections of the Internal Revenue Code which by their express terms apply only to either specific transactions giving rise to a loss (secs. 267, 356 (c), 373, 1242, 1243, 1244) or specific transactions giving rise to a gain (secs. 333, 1237 (b), 1239, 1245, 1246, 1248, 1249, and 1250). For example, section 267 provides, in substance, that "no deduction shall be allowed" for losses arising from the sale of property between related parties. We have had several occasions to interpret that section with regard to the question we are confronted with here. That is, what happens if a taxpayer sells property on two different occasions to a related party, where one transaction results in a gain and the other in a loss? In each case the result is the same— the loss is not deductible and the gain must be included in full. *Estate of Edwin H. Johnson*, 42 T.C. 441 (1964), on appeal (C.A. 6, Oct. 22, 1964) ; *Jacob M. Kaplan*, 21 T.C. 134 (1953) ; *Frank C. Engelhart*, 30 T.C. 1013 (1958) ; *Lakeside Irr. Co.* v. *Commissioner*, 128 F. 2d 418 (C.A. 5, 1942), affirming 41 B.T.A. 892 (1940), certiorari denied 317 U.S. 666 (1942) ; and *M. F. Reddington Co.* v. *Commissioner*, 131 F. 2d 1014 (C.A. 2, 1942), affirming a Memorandum Opinion of this Court. Each sale of property is a separate transaction, and the gain or loss must be computed separately on each such transaction. *Lakeside Irr. Co.* v. *Commissioner, supra.* Section 267 specifically disallows losses—"It does not provide that gains from such sales shall not be recognized." *Estate of Edwin H. Johnson, supra* at 446.

In *M. F. Reddington Co.* v. *Commissioner, supra* at 1015–1016, the circuit court said:

If, in forbidding deduction of such losses, Congress had intended to refer to "net losses," it was easy to say so.[1] The application of the "so easy to say so rule" is pertinent here, since Congress elsewhere in the same Act used the "net loss" locution: * * * [Footnote omitted.]

See also *Commissioner* v. *Beck's Estate*, 129 F. 2d 243, 245 (C.A. 2, 1942), reversing 43 B.T.A. 147 (1940). As was stated in *M. F. Reddington Co.* v. *Commissioner, supra*, where Congress wanted a "net loss" or "net gain" concept, they so stated in clear and simple language. See secs. 1201, 1202, 1212, 1222, 1231, 1302, and 1375 (a).

In *Curtis* v. *United States*, 336 F. 2d 714 (C.A. 6, 1964), the question of merging the gains and losses from separate sales of property was before the Sixth Circuit, this time in connection with section 356 (c). Section 356 (c) provides as follows:

(c) Loss.—If—
(1) section 354 would apply to an exchange, or section 355 would apply to an exchange or distribution, but for the fact that

(2) the property received in the exchange or distribution consists not only of property permitted by section 354 or 355 to be received without the recognition of gain or loss, but also of other property or money,

then no loss from the exchange or distribution shall be recognized.

The circuit court quoting extensively from *Lakeside Irr. Co.* v. *Commissioner, supra,* agreed that "in ascertaining gain and loss by sales or exchange of property previously purchased, in general such purchase is a separate unit as to which cost and sales price are to be compared." Once again the netting of gains and losses was disapproved. See also section 1.333–4(a), Income Tax Regs., wherein is stated:

Gain or loss must be computed separately on each share of stock owned * * *. The limited recognition and special treatment accorded by section 333 applies only to the gain on such shares of stock upon which gain was realized and not to net gain computed by setting off losses realized on some shares against gain on others. * * * [10]

We are of the opinion that the merging of the two sales here involved so as to eliminate the recognition of any loss by Pasadena would be contrary to the principles set forth above. It seems apparent to us that where Congress wanted a net result it so stated in clear, concise, and unambiguous language. We are unable to find nor have we been referred to a single case or a single section of the Code which requires the application of a "net" concept in the absence of clear language to do so. We will not do so in this case. To force the sales in this case to be merged for purposes of determining the net gain or loss will have the added effect of defeating the purpose of section 337(c)(2)(B). We have already seen that section 337(c)(2) (B) does not apply to losses—that is, losses are fully recognizable. However, gain under the section can qualify for nonrecognition. If a gain which is not recognized is used to eliminate a fully recognizable loss, this would be tantamount to affording nonrecognition to losses. *Estate of Edwin H. Johnson, supra.* Just as in sections 267 and 356-(c), unequal terms, i.e., recognized losses and nonrecognized gains, cannot be used to offset each other without doing violence to the section. This result is entirely consistent with the sections here involved. Furthermore, the wording of section 337(c)(2)(B) clearly indicates that in order to determine whether a gain is to be recognized at the subsidiary level a comparison must be made on an individual asset basis, not on an aggregate basis. That is, a comparison must be made of the adjusted basis of the stock of the subsidiary which is allocable to the asset sold and the adjusted basis in the hands of the subsidiary of the asset sold. If such a comparison must be made to determine gain recognized on an individual basis, then it is not unreasonable or

---

[10] See sec. 1.1248–1(a)(1), Income Tax Regs., wherein it is provided that "the amount of gain to be included in a person's gross income as a dividend under section 1248(a) shall be determined separately for each share of stock sold or exchanged."

inconsistent to determine whether there is a recognized loss on the same basis.

Respondent maintains that to permit Pasadena to compute gain and loss separately on each sale, recognizing the losses but not the gains, would confer an unintended double benefit. Tax consequences could then be manipulated simply by disposing of loss-producing assets in one sale, obtaining complete recognition of losses, and disposing of gain-producing assets in a separate sale, thereby avoiding recognition of gain up to the limit provided by section 337(c)(2)(B). Respondent submits that such a double benefit should not be permitted by the Court in the absence of specific language in the statute or the legislative history. We do not see how the result we reach here will confer a *double* benefit on either Pasadena or the petitioner. The purpose of the nonrecognition of gain, as we stated previously, computed under section 337(c)(2)(B), is to reach the same tax consequences as if the parent had purchased the assets of the subsidiary instead of its stock. The purpose of allowing the recognition of a loss at the subsidiary level is for the same reason that, under certain circumstances discussed earlier, a gain is recognized. That is, in either case, if the gain or loss is not recognized at the subsidiary level, it will not be recognized anywhere else because of section 332. Therefore, by allowing the loss to the subsidiary, we are not permitting a double benefit. Furthermore, the adoption of respondent's approach would result in the application of a "netting" concept without any congressional guidance in this direction. This we will not do.

Accordingly, we hold that Pasadena suffered a recognized loss of $248,634.51 on the sale of certain securities during the year 1956, which loss is treated as an ordinary loss by virtue of section 582(c).

Reviewed by the Court.

*Decision will be entered under Rule 50.*