WELDON J. AND NORMA J. JULES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jules v. Commissioner
Docket No. 12298-80.
United States Tax Court
T.C. Memo 1982-290; 1982 Tax Ct. Memo LEXIS 448; 43 T.C.M. (CCH) 1476; T.C.M. (RIA) 82290; May 26, 1982. Weldon J. Jules, pro se. Dennis Brager, *449 for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $ 1,538 in petitioners' Federal income tax for 1976. One issue for decision is whether the deficiency was determined as a result of a second inspection of petitioners' books of account within the meaning of section 7605(b). [1] In addition, in dispute are seven deductions which, respondent argues, have not been substantiated: (1) Rental loss of $ 1,385; (2) State and local taxes of $ 2,997; (3) medical expenses of $ 1,025; (4) interest expenses of $ 4,125; (5) educational expenses of $ 854; (6) an alleged casualty loss of $ 78; and (7) charitable contributions of $ 481. [2]
At the time their petition was filed, petitioners were legal residents of *450 Carson, California. They filed a joint Federal income tax return for 1976. 1. Second Examination of Petitioners' Return
During 1976, petitioner Weldon Jules (petitioner) was employed by McGraw-Hill Book Company as the sales manager for a specified territory, and received a salary in the amount of $ 16,025.40. According to petitioner, his 1976 return was audited sometime in 1977, and he was then required to, and did, pay a deficiency of "maybe $ 100.00 or $ 150.00, something like that." As a result of the acceptance by his wife (petitioner Norma J. Jules) of a job with the Internal Revenue Service (sometimes hereinafter the IRS) in March 1979, their joint return for 1976 was, according to petitioner, again audited. As a result of the second audit, a notice of deficiency was issued on April 15, 1980, determining the deficiency here in dispute. Petitioner testified that, upon completion of the first audit, he destroyed all of his records and was, therefore, unable to provide any documentary substantiation of the first audit or the payment of any determined deficiency. Respondent introduced the testimony of an IRS review technician, an automatic data processing (ADP) coordinator, *451 to establish that the Internal Revenue Service's ADP records with respect to petitioners' 1976 return show that it was audited (an "employee audit") only once. The date of the input with respect to the audit was December 29, 1978. The records do show that, shortly after the return was filed, a refund of $ 1,970.85 was issued and that this refund differs from the claimed amount ($ 1,996.85) due to a mathematical error on the return. On the basis of the record before the Court, we are unable to find that petitioners' 1976 return was audited more than once. Because petitioner did not keep any of the papers on the alleged first audit, he may have confused the 1976 "audit" with the audit of his return for another year or with the mathematical correction of the amount of the refund claimed on his return. In any event, we find that the IRS did not subject petitioners to an unnecessary examination nor did it undertake a second inspection of petitioners' records. Even if the Internal Revenue Service's ADP records were erroneous, as petitioner emphatically suggested in cross-examining respondent's witness, and a second audit of his return was made, petitioner did not make any records *452 available to the examining agent in connection with the December 1978 examination. Section 7605(b) [3] places restrictions on more than "one inspection of a taxpayer's books of account," and not on simple requests for information from which liability may be determined. Because no second inspection of petitioners' books of accounts was in fact made, the Internal Revenue Service's failure to give written notice pursuant to section 7605(b) of the audit leading to the issuance of the notice of deficiency does not render the notice of deficiency invalid. Ballantine v. Commissioner,74 T.C. 516, 524 (1980); United States Holding Co. v. Commissioner,44 T.C. 323, 327 (1965). 2. Disallowed Deductions
As a *453 result of petitioner's failure to furnish information on his income and deductions in connection with the audit leading to the notice of deficiency, respondent disallowed all itemized deductions and allowed petitioners the benefit of a "standard deduction" of $ 2,339. The disallowed deductions are as follows: 1. Rental loss
$ 1,385
2. Taxes
$ 2,997
3. Interest expense
$ 4,125
4. Medical expense
$ 1,025
5. Educational expense
$ 854
6. Casualty loss
$ 78
7. Charitable contributions
$ 481
Although petitioner did not have documents to substantiate the claimed deductions, he orally testified that he incurred numerous expense items. We are satisfied that he paid a substantial number of the amounts for which he claime deductions. We have concluded that we should approximate those deductions as closely as we can, bearing heavily upon petitioner because the inexactitude of the deductible amounts is of his own making. Cohan v. Commissioner,39 F.2d 540, 544 (2d Cir. 1930). A. Rental Loss
Petitioner's tax return showed that he received rental income of $ 1,860, and respondent has not challenged the correctness of that amount. *454 He testified that he owned and rented a three-bedroom house containing 1,600 square feet, located in Ridgecrest, California, about 169 miles from his residence. On the house, he had an outstanding mortgage note payable to Cowell Company on which he owed about $ 9,000 and which bore interest at the annual rate of 5-1/4 or 5-1/2 percent. On this note he paid $ 122 per month. These payments covered his principal, interest, and taxes. He testified that he took the interest ($ 581.61) and tax ($ 521.68) deductions for his 1976 return from the statements given him by the loan company. He testified that he also incurred expenses for insurance ($ 265), for cleaning and replacing cooler pads ($ 75), for gardening and landscaping ($ 140), for painting the house ($ 565), for use of a car for supervision trips ($ 255), for depreciation of the house ($ 433) and of carpets which cost $ 1,000 ($ 100), for telephone calls ($ 85), and for a number of other repair and maintenance items. We think it quite apparent that petitioner actually incurred many of these expenses in owning and renting his property. We have no reason to question, for example, his testimony that he owed a mortgage note, *455 that he paid interest on it, that he paid taxes and insurance on the rented house, and that he incurred at least some of the enumerated expenses. Nor can it be denied that his rental property depreciated--both the house and the carpets. On the other hand, we think some of the claimed items are excessive. He admitted, for example, that $ 265 of the $ 565 deducted for painting represented the value of his own labor. Further, when the Court asked for an explanation of the claim for telephone expenses, he admitted that the figure was an estimate. We are not satisfied that the claimed insurance expense was for a single year. Using our best judgment in the light of all the testimony, we find that petitioner's deductible expenses and depreciation were $ 2,800 and that the amount of his rental loss deduction was $ 940 rather than $ 1,385. B. Taxes
When petitioner moved in 1969, he bought a home in Los Angeles. On this home, he testified that he paid taxes in 1976 of $ 660.13. He also testified that he paid taxes of $ 538.27 on 1 acre of unimproved recreational land located in the Golden Hills Country Club area (referred to as the Boise-Cascade property). In addition, he claimed *456 as taxes items labeled as follows: Sales-auto repairs
$ 190
Tax on furniture
$ 280
Gasoline tax
$ 207
Restaurant tax
$ 253
Clothes tax
$ 288
Toys and gifts
$ 188
Miscellaneous
$ 296
From the testimony, it appears that these last seven claimed deductions actually represent estimated sales taxes. He also claimed an automobile license fee deduction of $ 97. In the light of all the testimony, we find that petitioner is entitled to a deduction of $ 660.13 for taxes paid on his Los Angeles home. We are not satisfied that he paid taxes on the unimproved Boise-Cascade property in the amount claimed or in any amount. In connection with his testimony on his interest deductions, he testified that $ 57 per month was taken from his paycheck to apply on his purchase of land which, we infer, was the Boise-Cascade property. His interest deduction, as we shall discuss, with respect to this property was $ 434. In the absence of more direct evidence on the point, we are not satisfied that the land was purchased under arrangements which obligated him to pay the taxes on it. As to the sales tax, respondent on brief has stated that the maximum deduction allowable *457 to petitioner is $ 205, as computed by the optional State sales tax tables; as a matter of administrative convenience, the Commissioner permits taxpayers to rely on these tables without verifying an exact amount of sales tax paid.While petitioner is at liberty to claim a greater amount, the burden of proving entitlement to amounts exceeding the tax table rate rests with him. The Commissioner does permit additions to the tax table amounts for taxes paid as select costly items, e.g., purchases of motor vehicles and airplanes, but the seven enumerated items claimed by petitioner do not fall within this exception. As petitioner failed to verify that he paid sales tax in excess of $ 205 on the seven items, the allowable deduction is limited to that amount. Petitioner's "auto licenses" expenditures are deductible personal property taxes, sec. 164(a)(2), to the extent that they are ad valorem taxes imposed annually on personal property.Sec. 1.164-3(c), Income Tax Regs.; Cal. Rev. & Tax Code sec. 10752, secs. 10701, et seq. (West 1970). It is uncertain, however, whether petitioner included in his $ 97 deduction California's flat registration fee (not ad valorem *458 and hence not deductible) or any additional registration fee. [4]Cal. Vehicle Code sec. 9250 (West 1971); see, e.g., Cal. Vehicle Code sec. 9252 (West 1971). We think, therefore, that petitioner is entitled to deduct $ 60 as personal property taxes paid on automobile licensing. Petitioner has substantiated a tax deduction of $ 925.13 compared with the claimed amount of $ 2,997. C. Interest Expense
Petitioner claimed an interest deduction of $ 4,125. He testified that he paid interest in the amount of $ 1,587 on a $ 22,000 mortgage note on his Los Angeles home. In addition, he testified that he paid interest on the Boise-Cascade property purchase. He also testified that he had outstanding loans from the Bank of America, Arco Finance, and McGraw-Hill Credit Union, and a long list of credit card and installment purchase accounts on which he paid *459 interest. Petitioner explained that he attributed his frequent IRS audits to his large interest deductions. He testified that he held the properties that he had bought (the Ridgecrest rental, Boise-Cascade, and Los Angeles residential properties) in order "to invest for the future." To carry them at a time when his wife was not working, he had to borrow money to make the payments and keep his credit up, "hoping that the land would pay off." We have no reason to question petitioner's testimony as to the $ 1,587 interest expense incurred on his home mortgage. Although the testimony on other items is not as detailed or as satisfactory as petitioner could have made it with some effort, we think he also incurred a substantial additional interest expense. In the light of all the testimony, we find that his deductible interest expense amounted to $ 3,300 of the $ 4,425 claimed, including interest of $ 434 on his Boise-Cascade property note. D. Medical Expense Deduction
Petitioner testified at some length regarding his medical expenses in 1976. He testified that his wife visited several doctors very frequently. He described her as a very nervous person who was taking Valium *460 for her condition. In 1976, she broke her ankle and incurred expenses for X-rays and other medical care. In addition, his daughter suffers from anemia. In the light of all the evidence, we find that petitioner incurred deductible medical expenses (over and above the 1-percent and 3-percent limitations) in the amount of $ 350 (including hospitalization insurance) in lieu of the claimed amount of $ 1,025. [5]
E. Educational Expense
Petitioner testified that his employer suggested that he take certain courses in vocational education at a local university, leading to a masters degree, and agreed to pay one-half of his fees. He testified that his tuition, books, mileage to and from school, and parking cost him $ 319 per semester. He testified that he attended school two semesters, incurring total expenses of $ 638. In addition, he deducted $ 216 in connection with the preparation and reproduction of a thesis. The theory underlying petitioner's claim of the educational expense deduction appears to be that the courses *461 "improved" the "skills" required in his employment in book sales work. Sec. 1.162-5(a)(1), Income Tax Regs. He testified that he worked in the Vocational Educational Division of McGraw-Hill.As sales manager, he had responsibility for planning and arranging home economics and other vocational workshops, including assistance in obtaining public funds. These activities assisted in promoting his work as a territorial sales manager. We have no reason to question petitioner's testimony that the educational courses were related to his job or that he incurred and paid the tuition costs. As to his claim of mileage to and from school and most of his expenses related to his thesis, we think the testimony was too sketchy to be convincing. Using our best judgment, we find that petitioner had deductible educational expenses of $ 400. F. Casualty Loss
Petitioner claimed a casualty loss of $ 78, after deducting the $ 100 limitation. Sec. 165(c)(3). He testified that, as a result of a wind, some bricks were blown off a wall or his house, the testimony is not clear, and he lost some shrubs. On this basis he claimed a casualty loss deduction. We found the testimony on this issue unconvincing. *462 The testimony does not purport to meet the section 165(c) substantiation requirements (sec. 1.165-7(b), Income Tax Regs.) relating to the adjusted basis of the property and its value before and after the casualty. We do not think it was sufficient to show that petitioner is entitled to the claimed deduction. G. Charitable Contributions
Petitioner claimed a charitable contribution deduction in the amount of $ 481. He testified that he, his wife, and daughter attended church two or three times a month and contributed $ 2 to $ 2.50 on each occasion. They also contributed to the band booster club of Pius X High School. In addition, petitioner contributed used clothing to the Salvation Army. In the light of all the testimony, we find that petitioner has shown that he made allowable charitable contributions in the amount of $ 125. We have made the foregoing findings on the basis of our best judgment in the light of all the evidence. Our findings are based primarily on figures, some of which were estimates, presented in petitioner's oral testimony.We do not fault the IRS for demanding substantiation. In accepting petitioner's testimony in part, we have taken into account *463 petitioner's statement that he had destroyed his records after what he apparently thought was an examination of his return. We recognize the possibility that he might have been able to establish larger deductible amounts if he had made any real effort to reconstruct his records (such elementary records as his receipts or books on his Ridgecrest, Los Angeles, and Boise-Cascade real properties showing his interest and tax payments; his insurance payments on his Ridgecrest house, etc.) instead of relying so heavily on his "second inspection" legal argument under section 7605(b). For any subsequent year he should not count on even partial acceptance of his estimates of deductions which are easily subject to substantiation. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted. ↩
2. Although respondent does not discuss on brief the charitable contributions, this deduction was disallowed in the notice of deficiency, and testimony concerning the items was presented. We thus think this issue is properly before us.↩
3. SEC. 7605. TIME AND PLACE OF EXAMINATION. (b) Restrictions on Examination of Taxpayer.--No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.↩
4. Because petitioner failed to show that a portion of the automobile use was for business purposes, no deduction of the otherwise nondeductible flat fee is permitted. See Rev. Rul. 74-454, 1974-2 C.B. 57, superseding Rev. Rul. 65-62, 1965-1 C.B. 106↩.
5. Petitioner's return shows a medical expense deduction of $ 1,099; this amount was reduced to $ 1,025 to account for petitioner's mathematical error.↩